## PROCURING A MISCARRIAGE.

Court of Appeals of Franklin County.

## J. W. TIPPIE v. STATE OF OHIO.

Decided, February 4, 1913.

*Criminal Law—Charging Defendant with Taking a Preliminary Step in the Commission of an Offense with Intent to Commit the Offense Not Sufficient—Miscarriage—Removal of a Dead Foetus Not Within the Statute—Intent of the Operator—Mistaken Diagnosis— Weight of Evidence.*

1. The crime of causing a miscarriage, or the death of the patient upon whom a miscarriage was attempted, is not charged in an indictment which goes no further than to allege that chloroform was administered to the said patient with intent to procure a miscarriage, but while she was under its influence the patient died.

2. The removal of a dead foetus is not producing a miscarriage within the contemplation of the statute; and one accused of causing the death of a woman through an attempted miscarriage is entitled to an instruction to the jury to the effect that if he honestly believed from his examination of the patient that there was a dead foetus in her uterus, and administered chloroform to her as an anaesthetic with the intention of removing said foetus, and she died from the effects of the chloroform before an operation had been attempted, he should be found not guilty.

3. Such an instruction would not be erroneous because of failure to provide that the honest belief of the accused must have been based on reasonable grounds, since if there should be a finding that the intent of the accused was not to destroy foetal life but to relieve the patient of a foetus already dead, there would be a failure on the part of the state to prove intent, and the accused would be entitled to an acquittal.

4. The testimony of the husband of the deceased that he arranged with the accused for the procurement of a miscarriage, does not, where contradicted in essential particulars, outweigh the presumption of innocence, a good reputation and a plausible connected story to such an extent as to warrant a verdict of guilty beyond a reasonable doubt.

*F. L. Owen,* for plaintiff in error.
*E. C. Turner* and *W. E. King,* contra.

DUSTIN, J.; ALLREAD, J., and FERNEDING, J., concur.

Section 12412, General Code, provides:

"Whoever, with intent to procure the miscarriage of a woman, prescribes or administers to her a medicine, drug, substance, or with like intent, uses an instrument or other means, unless such miscarriage is necessary to preserve her life, or is advised by two physicians to be necessary for that purpose, if the woman either miscarries or dies in consequence thereof, shall be imprisoned." etc.

Under this section, J. W. Tippie, a physician, was indicted as follows:

"J. W. Tippie * * * on or about the second day of August, in the year of our Lord one thousand nine hundred and twelve * * * unlawfully, wilfully and knowingly did administer and caused to be taken by one Nettie Engler, the said Nettie Engler being then and there pregnant with child, a certain quantity of a certain poisonous drug, to-wit, about a dram of chloroform, which said chloroform was then and there administered to the said Nettie Engler by said J. W. Tippie, with the intent then and there to procure the miscarriage of the said Nettie Engler; said miscarriage not being then and there necessary to preserve the life of the said Nettie Engler and then and there not having been advised by two physicians to be necessary for said purpose. In consequence of the taking of said poisonous drug, to-wit, chloroform so administered to the said Nettie Engler by the said J. W. Tippie at the time and with the intent aforesaid. the said Nettie Engler then and there on the second day of August, A. D. 1912, at the said county of Franklin died."

On trial Tippie was convicted and sentenced to one year in the penitentiary.

Error in the proceedings is claimed:

First. Because the indictment does not state a crime, in that it charges that a miscarriage was produced by chloroform, whereas it is impossible to produce a miscarriage by the use of that drug alone.

In answer to this, it is contended by the state that the use of chloroform was one of the preliminary acts of the crime, which was to be followed by the use of instruments, and the use of the drug, therefore, in furthering the intent to produce a miscarriage, made it a criminal act, under the section quoted.

The court can not take notice that chloroform will not produce a miscarriage, it being a scientific fact not sufficiently well known to come within the purview of judicial knowledge. But on the trial it was clearly shown by the uncontradicted testimony of medical witnesses.

It then became a legal question, for the court to decide, whether under the evidence there had been a failure of proof.

The indictment charges the use of only one means, and, concededly, that was insufficient of itself. Was it incumbent, therefore, upon the court to direct a verdict of acquittal? The common pleas court held with the state that the crime was made out, if the use of chloroform was one of the means contemplated in the criminal intent, and that means proved fatal to the patient, although it did not produce and could not produce a miscarriage.

There was evidence tending to show that the chloroform was used to produce anesthesia, and, while the patient was in that state, instruments were to be used to effect a miscarriage. But, was that the crime charged in the indictment? We think not.

The Supreme Court has recently indicated its adherence to the well established rules of criminal law that require the crime charged to be accurately described in the indictment. In *Coblentz* v. *State,* 84 O..S., 235, it was held that an indictment "must aver all of the material facts necessary to be proven in order to convict, with such reasonable certainty as to advise the defendant what he may be expected to meet at the trial."

The indictment makes no allusion to instruments nor the use of them. The defendant went to trial relying upon his ability to show that chloroform could not produce a miscarriage, as charged in the indictment, and then evidence was permitted on behalf of the state that he *intended* to follow up the chloroform by the use of instruments.

We think that was prejudicial error.

The case of *Tabler* v. *State*, 34 O. S., 127, is cited as sustaining the view of the trial judge. But we think that case may be fairly distinguished from the one at bar.

In the Tabler case there were two counts in the indictment, one charging the use of a drug, and the other the use of an instrument, to destroy the foetus. The verdict was general, finding defendant guilty on both counts, and it was argued by his counsel that that involved a contradiction, and that it was error for the court to refuse to charge that a finding that the crime was the combined result of the two means would require an acquittal.

The court held that there was no error.

It does not appear from the report of the case what the drug was that was alleged to have been used; but the argument and the opinion are based upon the view that either the drug or the instrument might have been effective; and that the use of both would simply hasten the fatal result. Hence, a finding of a combined effect was not repugnant to a verdict on both counts.

In the indictment under consideration, no instrument is alluded to, and the drug that is alleged to have been used is harmless so far as producing a miscarriage is concerned.

If this verdict is allowed to stand, the records of the court will show that a man was convicted of producing a miscarriage by the sole use of a drug that is conceded by scientific and medical experts as incapable of such an effect.

Second. Again, it is claimed that the court erred in refusing to give, before argument, instruction No. 5 asked by defendant, as follows:

"If the defendant honestly believed from his examination of Nettie Engler that there was a dead foetus in the uterus, and that chloroform was administered as an anaesthetic, so that he could remove the foetus without pain to the patient, and she died from the effects of the chloroform, he would not be guilty, even though he was mistaken in his judgment, and your verdict should be not guilty."

This charge stated briefly the whole defense; and, we think, should have been given.

. The court, it is asserted, was of the opinion that the instruc-
tion and the defense lacked the important element, in the lan-
guage of the statute, that the miscarriage contemplated was
"necessary to preserve life or was advised by two physicians to
be necessary for that purpose;" and that it was sufficient for
the defendant to show that he honestly believed the foetus to be
dead, and that the use of the chloroform was to prepare for its
removal without pain to the patient.

The history of the statute shows that it was designed · to
punish the removal of a "vitalized embryo"; and that phrase
was in use until the abbreviated form of the codification was
adopted.

And I think we may assume that that continued to be the in-
tent of the Legislature.   For, after the embryo is dead, it would
seem, even to a layman, that the wise and humane act would
be to remove it.

Dr. Hamilton testified (p. 150 of the record) that:

"It is good practice to remove a dead foetus whenever the
condition can be made out."

We think, therefore, that the removal of a dead foetus was
not, in contemplation of the statute, producing a miscarriage.

If done, unlawfully, by unprofessional hands, or without
reasonable grounds to believe the foetus to be dead, and death to
the patient results, the operator would be guilty of manslaughter,
but not of the crime charged.

It is suggested that to permit an acquittal on the ground
that the defendant acted on an honest belief that the foetus
was dead, is to open a wide door of escape for abortionists, for
they would always claim an honest belief that the foetus of the
victim was dead.

That does not follow.   The jury would always consider
whether there were any reasonable grounds for such belief.   It
is not to be presumed that a claim of honesty of purpose will be
allowed simply because asserted, or as against facts and cir-
cumstances inconsistent therewith.   Intent is of the essence of
the crime, and defendant should be allowed to show an innocent

intent, and have the jury instructed that the evidence with reference thereto may be considered.

It is contended by the state that Instruction No. 5 is faulty because it does not provide that the honest belief of the accused must be based upon *reasonable grounds,* as when self-defense is claimed as necessary to preserve life.

The distinction is that self-defense is an affirmative defense to be made out by the accused; whereas, here the instruction requested was simply to weaken the case of the state, upon which the burden rests to prove the criminal intent. If the jury should find, according to the instruction, that the intent was not to destroy foetal life but to relieve the patient of a foetus already dead, then the accused was entitled to acquittal because the state had failed to prove the alleged intent.

We think, therefore, under the defense that the foetus was thought to be dead, that instruction No. 5 should have been given.

Third. Lastly, we think the verdict was not justified by evidence of guilt beyond a reasonable doubt.

Defendant's story, if true, is consistent with innocence, and with all the circumstances and all the evidence, except that of the husband of the victim, who, by his own confession, is *particeps criminis.*

According to Dr. Tippie's testimony, upon complaint of the patient, he made three examinations and found bloody and purulent discharges; and upon final confession of the patient that she had used a lead pencil to bring about a miscarriage, concluded that the instrument had, at least, been successful in mutilating the parts and perhaps in killing the foetus; and that, if so, it would be proper to operate.

But, before operation, and after chloroform had been administered, he had cleaned the parts and introduced a speculum and curet; and not discovering the serious condition that he had anticipated, withdrew the instruments, decided not to operate then, and told his assistant that he was "through." This language, uttered at the time alleged, is confirmed by his assistant, who appeared as a witness for the state.

A few minutes thereafter the patient died from the effects of the chloroform.

An autopsy showed that the foetus had not been disturbed nor mutilated and that the foetus showed a period of four or five months gestation.

The testimony of medical witnesses was that it was quite difficult, at that age, to determine whether it was dead or alive, and that the alleged symptoms of bloody and purulent discharges, and chilliness of the patient, were in harmony with the theory that the foetus was dead, and that the reported use of a pencil would strengthen that opinion.

As against this there is the testimony of the husband that he arranged in his preliminary interview with the doctor for the procurement of a miscarriage.

We think this testimony, contradicted, in essential particulars, should not weigh against the presumption of innocence, a good reputation and a plausible connected story, to the extent that it warrants a verdict of guilty beyond a reasonable doubt.

For these reasons we think the motion by defendant for an instructed verdict of not guilty should have been sustained.

Judgment reversed and the accused discharged.