**Ex parte TUAN VAN TRUONG.**

**No. 70672.**

Court of Criminal Appeals of Texas,
En Banc.

May 10, 1989.

Tuan Van Truong, pro se.

John B. Holmes, Jr., Dist. Atty. and Calvin A. Hartmann, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

PER CURIAM.

This is a postconviction petition for habeas corpus relief pursuant to Article 11.07, V.A.C.C.P. The claim we ordered filed and set is that in the punishment phase the trial court "committed error" in giving the jury an improper instruction.

More particularly, Applicant contends he is entitled to relief from consequences of a sentence imposed in accordance with punishment assessed by a jury unconstitutionally charged on the parole law mandated by Article 37.07, § 4, V.A.C.C.P. See *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1987, 1988).

At the outset, however, the Court is confronted with the threshold question of whether the contention may be raised and pursued under authority of Article 11.07. Regardless of a prior direct appeal presenting a point of error challenging validity of the sentence, we will hold his "*Rose* claim" is not cognizable in a postconviction habeas proceeding under Article 11.07.

First we emphasize that this Court decided the issues in *Rose* "solely on the Constitution and laws of the State of Texas," *id.*, at 531. Accordingly, the instant opinion is likewise founded on that same basis, and we do not intend to implicate a federal question, substantial or otherwise.

Article I, § 12 of the Bill of Rights provides:

> "The writ of habeas corpus is a writ of right, and shall never be suspended. The Legislature shall enact laws to render the remedy speedy and effectual."

When any person is restrained in his liberty, the writ of habeas corpus is the remedy to seek. Article 11.01, V.A.C.C.P. To make it speedy and effectual the Legislature has enacted, *inter alia,* the several provisions of Chapter Eleven, C.C.P.

Generally, once preliminary procedures have been accomplished and the matter is ripe for decision, the habeas judge or court shall determine whether *"legal cause* be shown for the imprisonment or restraint," and if none, to discharge the applicant. Article 11.40. See *Ex parte Coupland,* 28 Tex. 387, at 390, 391 (1862). Chapter Eleven "applies to all cases of habeas corpus for the enlargement of persons *illegally* held in custody or in any manner restrained in their personal liberty[.]" Article 11.64.[1]

Pursuant to Article 11.07, V.A.C.C.P., after final conviction in felony cases the writ will lie to challenge "legality of the applicant's confinement," resulting in a judgment of this Court either "remanding the petitioner [sic] to custody or ordering his release, as the law and facts may justify." *Id.,* § 2(c) and (d), and § 3.

Early on, first the Supreme Court and then this Court recognized that for purposes of habeas corpus the common law distinguished proceedings and their results according to the character and effect of error claimed to warrant relief. See generally *Ex parte Banks,* 769 S.W.2d 539 (Tex. Cr.App.1989) (Clinton, J., dissenting opinion at 4–10).

Thus, in *Perry v. The State,* 41 Tex. 488 (1874), the Supreme Court pithily pointed out:

"The writ of *habeas corpus* was not designed to operate as a writ of error or *certiorari,* and does not have their force and effect. It does not deal with errors or irregularities which render proceedings voidable merely, but such only as to render them absolutely void."

*Id.,* at 490.

When this Court was named the Court of Appeals, in *Ex parte Scwartz,* 2 Tex.App.

74 (1877), it drew heavily from works of learned commentators to explain:

" 'A proceeding defective for irregularities and one void for illegality may be revised upon error or *certiorari;* but it is the latter defect only which gives authority to discharge on *habeas corpus.'* A irregularity is defined to be a want of adherence to some prescribed rule or mode of proceeding.... Hurd on Habeas Corpus, 333, citing Tidd's Pr. 434, and 3 Chitty's Genl. Pr. 509.

Illegality is properly predicable of radical defects only, and signifies that which is contrary to the *principles* of law as distinguished from mere *rules* of procedure. It denotes a compete defect in the proceedings. Hurd, 333; Tidd's Pr. 435."

*Id.,* at 80–81 (emphasis in original). To compare *Ex parte Scwartz,* supra, with *Ex parte Slaren,* 3 Tex.App. 662 (1878), is illuminating and illustrative of application of these common law propositions.

Common law procedural rules governed and were applied in any particular state of case where the code of criminal procedure failed to provide a rule. Article 1.27, V.A. C.C.P. Until 1943 predecessors to Chapter Eleven did not provide specific procedures designed solely for handling postconviction writs of habeas corpus. See Historical Note to Article 11.07.

Acts 1943, 48th Leg., Ch. 233, p. 354, proposed to fill the void in felony cases by authorizing any district judge presented with a petition to set the same for hearing, to ascertain the facts and to order issuance of the writ returnable to this Court along with the record thus made, and as well by a supplementary proceeding whereby this Court might have the facts determined; this Court would then hear the matter and "enter its judgment remanding the petitioner to custody or ordering his release, *as the law and facts may justify."* That procedure was to be "exclusive" in discharging the prisoner. Its justification is stated in § 2, *viz:*

indicated.

---

1. All emphasis here and throughout is supplied by the writer of this opinion unless otherwise

"[P]resent statutes governing the writ of habeas corpus are inadequate to fully cover cases arising after final conviction, and [a] necessity exist[s] for prompt and adequate relief for *deserving* petitioners as well as the rights of the state in such cases[.]"

Except "as the law and facts may justify," the Legislature failed to identify "deserving" prisoners. However, at first opportunity, *Ex parte Ricketts*, 148 Tex.Cr.R. 569, 189 S.W.2d 872 (1945), the Court firmly preserved the *status quo ante*.[2]

Thus common law rules prescribing issues cognizable on post-conviction habeas corpus prevailed, and those limitations remained in force—that is, until advent of The Substantial Federal Question.[3]

Because the 1943 enactment and ensuing judicial treatment failed to meet needs of increased federal habeas corpus litigation and concomitant demands of the Supreme Court on petitioners and state courts, respectively, in such cases as *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), in Acts 1967, 60th Leg., Ch. 659, p. 1732, § 7, at 1734–1735 (Act), the Legislature reworked and expanded procedural requisites to produce revised Article 11.07.

Unlike its earlier effort in behalf of "deserving petitioners," the Legislature provided some standards for seeking and obtaining relief, *viz:* pleadings which "would render petitioner's *confinement* under the felony conviction *illegal;*" proof going to issues material to "whether the petitioner is illegally restrained," and this Court was still to "enter its judgment remanding the petitioner to custody or ordering his release, as the law and facts may justify." Acts 1967, *ante*, at 1734–1735.

In *Ex parte Young*, 418 S.W.2d 824 (Tex. Cr.App.1967), the Court construed amended Article 11.07 in light of several developments, including "[n]ew concepts of the meaning of due process announced by the Supreme Court of the United States," recognizing, "A judgment of conviction obtained in violation of due process of law is void for want of jurisdiction of the court to enter such judgment." *Id.*, at 826. Accordingly, the Court determined that in a postconviction habeas proceeding "the question is not why [applicant] is confined in the Texas Department of Corrections but whether the judgment of conviction under which he is so confined is void." *Id.*, at 827.

In sum, in 1967 the Legislature devised and the Court sanctioned by construction a system to render the remedy via habeas corpus "speedy and effectual," consonant with the admonition and mandate of Article I, § 12, Bill of Rights. Thus the constitutional provisions guarantee availability of the Great Writ pursuant to legislative en-

---

**2.** The Court understood applicant to take the position that under amended article 119, "he has the legal right to impeach and set aside an apparently valid judgment of a court of competent jurisdiction[;]" pointedly it noted the circumstance that the trial court had "jurisdiction of the person, of the subject matter, as well as the power to render the judgment, *is not even questioned.*" The Court thought that "unless said article accords to the relator such right, it does not exist," but found "nothing in the statute mentioned which ... enlarged his legal right[.]" Because it was obvious that the proceeding applicant initiated was a collateral attack on what appeared to be a valid judgment of a court of competent jurisdiction, the Court concluded the amended statute did not provide for that kind of challenge. *Id.*, 189 S.W.2d at 873.

Then the Court quoted from *Ex parte Dickerson*, 30 Tex.App. 448, 17 S.W. 1076 (1891), substantially the same propositions discussed *ante*, in pertinent part and omitting citations, *viz:*

"The judgment of inferior courts can only be attacked by writ of habeas corpus for such illegalities as render them void. Erroneous judgment of inferior courts having jurisdiction of the subject matter and of the person cannot be successfully attacked upon habeas corpus, unless they are so far erroneous as to be absolutely void. The judgment of a court of competent jurisdiction can not be impeached on collateral attack by habeas corpus for errors or irregularities not extending so far as to affect the question of power or jurisdiction in the court to act in the case.'"

**3.** For reflections of a hightened awareness of that issue in our habeas corpus proceedings, see, e.g., *Ex parte McCune*, 156 Tex.Cr.R. 213, 246 S.W.2d 171, 172–173 (1952); *Ex parte Puckett*, 165 Tex.Cr.R. 605, 310 S.W.2d 117, 118 (1958); *Ex parte Bush*, 166 Tex.Cr.R. 259, 313 S.W.2d 287, 288 (1958).

actments designed to enable an applicant to make a collateral attack and to obtain relief against a final judgment of conviction rendered void not only for reasons under common law but also for want of jurisdiction in the convicting court to enter it where conviction was had in violation of due process.

However, the issue here is not validity of that part of the judgment reflecting that applicant is adjudged guilty of the offense as found by verdict of the jury; rather, the claim is directed to that part of the judgment reflecting that applicant be punished in accordance with verdict of the jury assessing punishment. See Article 42.01, § 1, subdivision 8, V.A.C.C.P. And the contention is that because the jury had been unconstitutionally instructed on the parole law, its verdict assessing punishment is invalid, and by extension the resultant judgment is void. We reject the contention.

In *Rose v. State*, supra, the Court held that Article 37.07, 4, along with the instruction it mandates, is unconstitutional in that it violates the separation of powers doctrine of Article II, § 1, and also violates the Due Course Clauses of Article 1, §§ 13 and 19, Bill of Rights.

Addressing the first holding the Court distinguished "[t]his type of statutory error ... from charging error as envisioned by Article 36.19, V.A.C.C.P," *id.*, at 553; it did not remotely suggest that providing the jury with an unconstitutional instruction pertaining solely to considerations of punishment voided the verdict rendered by the jury. The only consequence is that a harm analysis must be conducted under Tex.R. Pro.App. 81(b)(2) instead of *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985), "to determine whether it calls for reversal of the conviction." *Ibid.*

As to the latter holding, on original submission a plurality agreed: "The risk that punishment will be based on extraneous considerations is intolerable in a society that constitutionally demands concepts of fundamental fairness be honored in its criminal justice system." *Id.*, at 537. Nevertheless, a majority was unwilling to find that "the infirm instruction fatally in-

fected the entire punishment hearing," within contemplation of *Ex parte Coleman*, 599 S.W.2d 305 (Tex.Cr.App.1978). *Id.*, at 537. n. 10; see also *Ex parte Maldonado*, 688 S.W.2d 114, at 116, n. 2 (Tex.Cr. App.1985). On rehearing the Court decided that "the harm analysis codified in Rule 81(b)(2) is applicable to the error in this case." *Id.*, at 554.

Therefore, contrary to the contention advanced by applicant, this Court has determined that giving the unconstitutional instruction on parole law did not render verdict of the jury assessing punishment invalid nor the judgment based in part of that verdict void. To give the instruction may be harmful indeed, but is no more than reversible error. That is to say, the judgment is at best voidable, and as such is not subject to a collateral attack by writ of habeas corpus.

Inasmuch as applicant will be unable to demonstrate that including an unconstitutional instruction on parole law in a charge on punishment under Article 37.07, § 4, V.A.C.C.P., so fatally infected the entire punishment proceeding as to render the resultant sentence invalid and judgment void, see and compare *Ex parte Maldonado*, supra, at 116, n. 2, *Ex parte Coleman* and *Ex parte Scwartz*, both supra, we hold that his *"Rose* claim" of error is not cognizable in a postconviction habeas corpus proceeding, and thus will not be entertained, under Article 11.07.

Accordingly, the petition for relief on habeas corpus is ordered dismissed.

McCORMICK, P.J., and MILLER, J., concur in the result.

TEAGUE, Judge, dissenting.

Recently, we reaffirmed the long standing, poorly understood notion that habeas corpus is not a substitute for appeal. *Ex parte Banks*, 769 S.W.2d 539 (Tex.Cr.App. 1989). The effect was that matters which could have been, but were not, raised on appeal might not later be pursued by way of habeas corpus. The principle is akin to common waiver or forfeiture, whereby litigants are expected to complain of errors in

due course or risk losing the right to complain of them altogether.

Naturally, a literal application of the rule would utterly eliminate the writ of habeas corpus, at least as a challenge to defects in appealable proceedings, such as criminal trials. Consequently, certain defects have long been regarded as falling outside the rule. In practical effect, these defects cannot be waived, either by failure to object at trial or by the absence of a complaint on appeal. In short, they can be raised at any time, including by a remote collateral proceeding such as habeas corpus.

Chief among such defects, of course, are matters adversely affecting a court's jurisdiction. Without jurisdiction a tribunal has no authority to act at all, and its purported acts are therefore void. Clearly, defects rendering a proceeding void are not waivable. If they were, the proceeding would not be void but merely voidable. Hence, by implication, habeas corpus will lie to correct jurisdictional defects, that is defects which cannot be waived. *See Ex parte Watson*, 601 S.W.2d 350 (Tex.Cr.App.1980).

Problems arise, however, when the Great Writ is called upon to correct nonjurisdictional, or waivable, defects. For example, during the last twenty years this Court, following a federal lead, has made the writ available to correct errors arising from the violation of federal (and perhaps state) constitutional law upon the rather vague theory that a trial court lacks jurisdiction to convict without due process of law. *See Ex parte Young*, 418 S.W.2d 824, 826 (Tex. Cr.App.1967). Since most prohibitions of the federal constitution are applicable to the states only by way of the due process clause, it seems that convictions based upon any constitutional error violate due process. And presumably, convictions so obtained are absolutely void, the trial court has no jurisdiction to render judgment upon them. Also it would appear to follow that the defects making them so are not waivable.

But appearances can be deceiving when it comes to such a patent fiction as this. In every context except habeas corpus we do not regard defects as jurisdictional simply because they implicate the federal (and perhaps state) constitution, nor do we regard them as outside the usual rules of waiver and forfeiture for this reason alone. A whole array of alleged constitutional errors are routinely held to present nothing for review when raised for the first time on appeal. Yet some of these at least are thought to be cognizable in a habeas corpus proceeding. On the other hand, certain defects such as insufficiency of evidence are invariably entertained on appeal without the necessity of a complaint at trial, even though our caselaw precludes consideration of them by way of habeas corpus. Yet, a criminal conviction on insufficient evidence, it will be remembered, directly violates due process of law. We should be surprised to find, therefore, that convictions based on constitutionally insufficient evidence are not absolutely void and cognizable in habeas corpus. But such is, indeed, the current state of our caselaw. *See, e.g., Ex parte Christian*, 760 S.W.2d 659 (Tex.Cr.App.1988).

Further examples could be elaborated at length. Clearly, issues implicating double jeopardy and ineffective counsel, for example, have special problems. The point to be made here is that our approach to the cognizability of claims raised by application for writ of habeas corpus has been, and continues to be, hopelessly *ad hoc* and largely inconsistent with our approach to the law of jurisdiction, voidness, retroactivity, standing, waiver, and forfeiture. Today, we find that it is also potentially at odds with our rapidly evolving law of harmless error.

In a sense, what the majority opinion in this case teaches is that voidness and harmlessness are mutually exclusive concepts —a rather unremarkable proposition on its face, but disturbing in its implications. Here, applicant is denied relief because his claim is not cognizable in habeas corpus. It isn't cognizable because, even if his contentions are true, the judgment he attacks is not void. The judgment cannot be void because void judgments aren't subject to a harm analysis. Consequently, any defect

subject to the harmless error rule is not cognizable in habeas corpus.

This is an interesting result and one which, if pursued with even a modicum of rigor, should significantly reduce this Court's habeas corpus caseload. Also, it comports fairly well with the antecedent caselaw of the Court, at least when one excludes opinions involving a substantial federal question. It is possible, although not likely in my view, that we are obliged to address federal constitutional questions presented by habeas corpus even under circumstances where we would not be obliged to address state constitutional questions presented in the same way. Certainly, the majority opinion suggests as much. But what is most interesting to me about the approach taken by the majority is that it will doubtless provoke the most creative thinking on the question of cognizability undertaken by the Court in years.

In this connection, I am lately inclined to think that the focus of cognizability should be a more general theory of forfeiture than of voidness. What is cognizable by way of habeas corpus is a matter to be determined by this Court. It can be judicially expanded or contracted to meet current requirements of the system. Moreover, its reach should comport with fairness. Although all defects rendering a proceeding void should continue to be cognizable in habeas corpus for powerful reasons of jurisdiction, I now believe that other defects might also be brought within the scope of the writ under circumstances objectively tending to excuse what would otherwise constitute a forfeiture of the right to complain, so long as the applicant would have been entitled to relief either under the law existing at the time of the alleged defect or under subsequent retroactive changes in the law, and so long as the habeas proceeding will not involve relitigation of an issue previously and finally determined adversely to the applicant's position unless subsequent retroactive changes in the law would have required a different result.

In *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the Supreme Court of the United States stated the following in reference to the subject of "fundamental rights in the federal constitution": "They are not ephemeral enactments, designed to meet passing occasions. They are 'designed to approach immortality as nearly as human institutions can approach it.' The future is their care, and provision for events of good and bad tendencies of which no prophecy can be made. In the application of a constitution, therefore, our contemplation cannot be only of what has been, but of what may be. Under any other rule a constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general principles would have little value, and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality. And this has been recognized. The meaning and vitality of the Constitution have developed against narrow and restrictive construction." Also see *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

I find that these words have the same meaning when it comes to what meaning we should give to one of the most fundamental rights guaranteed to our citizenry through the Texas Bill of Rights, which is the fundamental and inviolate right to the writ of habeas corpus, which right, by our Constitution, "shall never be suspended." Art. 1, § 12, Texas Constitution. Also see Art. 1.08, V.A.C.C.P., which states without any limitation or qualification whatsoever that "The writ of habeas corpus is a writ of right and shall never be suspended."

Therefore, I do not approve denying applicant relief in the instant cause, simply because the proceeding he attacks is not absolutely void, without first affording him a chance to demonstrate that he has not yet had a full and fair opportunity meaningfully to litigate the issues raised in his habeas corpus application or that his failure to do so before now should be excused.