**Ex Parte Danny Lee BARBER.**

**No. 71344.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 23, 1994.

Rehearing Denied May 11, 1994.

Robert C. Owen, Austin, for appellant.

John Vance, Dist. Atty., Teresa Tolle, Kathy Drew, Asst. Dist. Attys., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

*OPINION*

MILLER, Judge.

This is a post conviction application for writ of habeas corpus filed pursuant to the provisions of Art. 11.07, V.A.C.C.P. Applicant was convicted of capital murder and sentenced to death by the trial court. Art. 37.071(b), V.A.C.C.P. This Court affirmed applicant's conviction and sentence on direct appeal. *Barber v. State*, 757 S.W.2d 359 (Tex.Crim.App.1988). Applicant's petition for writ of certiorari was subsequently denied by the United States Supreme Court. *Barber v. Texas*, 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861 (1989).

Applicant presents twenty-eight allegations in this application challenging the valid-

ity of his conviction and sentence. This Court ordered this cause filed and set for submission on applicant's second point and granted applicant a stay of execution.

■ In his second allegation, applicant claims that a court-appointed psychiatrist obtained evidence of his future dangerousness and testified about such evidence against applicant in violation of the United States Constitution. *See Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). We agree with Applicant's contentions that this was error. However, this Court finds the admission of Dr. Griffith's testimony to be harmless error. Accordingly, the relief sought is denied.[1]

■ In order to be entitled to relief on a writ of habeas corpus, an applicant must

---

1. Although we deny applicant the relief requested under a harmless error analysis, the issue of the delay in bringing this error before the court must also be addressed. This is the second writ of habeas corpus filed by this applicant. Applicant's first writ was filed pro se on April 21, 1983, one week after the statement of facts was filed in his direct appeal and before any briefs were filed. This court disposed of it without taking any action, because he had a direct appeal pending at the time. The first habeas corpus writ raised the *Estelle v. Smith* issue as a grounds for setting aside applicant's sentence and either granting him a new trial or commuting his sentence. However, for reasons unknown to this Court, applicant's direct appeal brief did not raise this issue. After this court took no action on applicant's first writ, his appeal was heard, a new competency hearing was granted and held, and his conviction was subsequently upheld. Applicant's direct appeal became final on March 20, 1989 when the United States Supreme Court denied his writ of certiorari.

Generally speaking, under these circumstances, raising a point of error in a writ of habeas corpus that existed at the time a previous writ was filed appears to be an unnecessary delay that should not be rewarded.

The federal courts recognize that a second writ of habeas corpus that raises new issues or questions of law is presumed to be an abuse of the writ if it appears that the writ is being used as a delaying tactic, and that the states have a recognized interest in preventing such abuses. *Barefoot v. Estelle,* 463 U.S. 880, 895, 103 S.Ct. 3383, 3395, 77 L.Ed.2d 1090 (1983), (affirming a Texas state case where the death penalty was imposed and affirmed by this Court). Where a petitioner on a subsequent writ complains of error that existed when the first writ application was filed, some federal courts consider this to be an abuse of the writ process. *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517, 545 (1991), *reh'g denied* 501 U.S. 1224, 111 S.Ct. 2841, 115 L.Ed.2d 1010; see also *Russell v. Collins,* 944 F.2d 202, 205 (5th Cir.1991). The second writ will not be considered to be an abuse if the applicant can show cause for raising a new point after one writ of habeas corpus has already been filed. *McCleskey* 499 U.S. at 498, 111 S.Ct. at 1472, 113 L.Ed.2d at 547; *Russell* 944 F.2d at 205.

It may well be that in order to reduce the unnecessary waste of time and expenses to the court system incurred by numerous applications for writs of habeas corpus, this court should consider refusing to hear writs that raise points of error that were available when the first writ was filed, unless good cause may be shown by the applicant for his failure to raise these points in his previous writ of habeas corpus.

Applicant's case demonstrates two situations constituting good cause for hearing a second writ of habeas corpus. The first is where, as here, the applicant's first writ raises an issue that, through no fault of his own, is not adjudicated. Good cause exists where a point of error has been previously raised by an applicant in a writ of habeas corpus but it was not decided upon by the court, and is again raised in a subsequent writ. The second situation is where the failure of counsel to object to the admission of testimony at trial is not a waiver of error because a constitutional defect has not been identified at the time of trial. When such a defect is identified after the trial, and its status is applied retroactively (as is the case with *Estelle v. Smith* ), the applicant should be allowed to raise the issue in his first subsequent writ of habeas corpus.

While applicant's case clearly establishes good cause, there are also unusual and compelling circumstances that absolve applicant from blame for the delay in reaching the *Estelle* point raised in applicant's pro se writ filed in April 1983. First of all, this court had the authority to consider that writ despite his pending appeal, see *Hill v. State,* 633 S.W.2d 520 (Tex.Crim.App.1982) (McCormick, J., on rehearing), but we elected to take no action and heard the direct appeal instead. In hindsight, this Court should have reconsidered the writ allegations after receiving appellant's brief and considered the ground then. *Hill,* supra. Instead, this Court chose to ignore applicant's pro se writ, which was filed two years after *Estelle v. Smith* was written, and heard only the complaints stated in the brief filed by his attorneys.

Moreover, applicant's direct appeal was pending before this Court at the same time that he filed his pro se writ of habeas corpus and his attorneys had not yet filed the appellant's brief in this Court. The direct appeal was set for submission before this Court on May 25, 1983. The applicant's attorneys could have raised the *Estelle v. Smith* issue on the direct appeal in the

plead and prove that the error complained of did in fact contribute to his conviction or punishment. *See Ex parte Dutchover,* 779 S.W.2d 76, 78 (Tex.Crim.App.1989).[2] Although in this case applicant has attempted to meet this burden in briefs submitted to this Court, we are not convinced that he has fully discharged that burden.

As noted in the State's brief, in addition to Dr. Griffith's testimony, the State introduced four confessions of applicant, three of which were to other murders, and the fourth of which was to an attempted murder. In all of these crimes applicant had sex with his victims, either before or after he killed them. Furthermore, the facts of this case show applicant was burglarizing a house when he bludgeoned his victim to death, and subsequently committed a sexual assault on the corpse. Three other felonies and a misdemeanor were introduced as convictions at punishment. During final argument, the State, rather than highlight Dr. Griffith's testimony, instead argued that there was so much evidence of future dangerousness the jury could ignore the psychiatrist's testimony and use the evidence alone to determine future dangerousness. In light of that evidence, and for the reasons cited in the State's brief, applicant has failed to demonstrate that he was harmed by the error of the

violation of *Estelle v. Smith,* and we deny his request for relief.

McCORMICK, P.J., and OVERSTREET, J., concur in the result.

CLINTON, J., dissents.

BAIRD, J., not participating.

MYERS, Judge, concurring.

I agree that relief should be denied in this case, but I am unwilling to join the Court's opinion for two reasons.

First, the Court's extensive discussion in a footnote of federal law concerning abuse of the writ and of this Court's probable future attitude toward the doctrine is altogether unnecessary to the disposition of this case. Although I too am eager for comprehensive changes in Texas habeas corpus practice, and might ultimately favor many of the suggestions made gratuitously by the Court here, I invite bench and bar alike to discount the expansive *obiter dicta* of this case. Not only is it superfluous in the present context, but clearly improper as well, since it purports to decide a question of first impression in Texas criminal jurisprudence without benefit of briefing or oral argument.

---

appellant's brief, or in the alternative, they could have requested the court to consider applicant's writ application concomitant with the appeal, *Hill,* supra. Unfortunately, applicant's attorneys pursued neither course of action and instead allowed this constitutional issue to go unchallenged before this Court.

Finally, the district attorney who prosecuted this case on appeal also failed to address the *Estelle v. Smith* issue, despite his knowledge of the pro se writ of habeas corpus, thereby contributing to the extreme delay with which this issue has finally come before this Court.

Dr. Griffith testified at applicant's trial in July of 1980. Applicant has had a right to complain of the Doctor's testimony since May 18, 1981, the day that *Estelle v. Smith* was handed down, despite his failure to object to Dr. Griffith's testimony at trial. The fact that the *Estelle v. Smith* issue was not properly raised any earlier than today can not be attributed to the applicant himself, who did all he could in trying to raise this issue in 1983. It seems highly improper to procedurally default him under these circumstances. Nevertheless, had applicant failed to ever raise

the *Estelle v. Smith* issue until this second writ of habeas corpus, we would be inclined to consider holding that such a delay would be the equivalent of an abuse of the writ.

The abuse of writ doctrine in the federal courts for subsequent applications for writs of habeas corpus is a positive method for reducing the strain on judicial resources incurred by numerous filings for writs that have no merit other than unnecessary delay. In the future, if an applicant for a subsequent writ of habeas corpus raises issues that existed at the time of his first writ, this Court would be inclined to hold as a general rule, and as a matter of policy, that this would be an abuse of the writ and, would likely dismiss the writ unless good cause be shown for the delay.

**2.** Although we are sympathetic with the suggested standard of harm suggested by Judge Meyers in his concurring opinion, since the error in this case did not even *contribute* to the jury's verdict, we need not determine here whether a higher standard or burden need be met by applicant.

Second, I do not agree that *Ex parte Dutchover*, 779 S.W.2d 76 (Tex.Crim.App. 1989) controls the harm analysis in this context. *Dutchover* merely assigns the burden of proof to the applicant. It does not alter the standard of review. Thus, for example, if an assessment of harm were made in habeas cases according to a standard like that set out in Rule 81(b)(2), it would be the applicant's burden to prove harm rather than the State's to disprove it. This approach would require that we grant relief in the instant cause if applicant can show that the error about which he complains "contribut[ed] to the conviction or to the punishment." The Court may be right that the evidence is sufficient without Dr. Griffith's testimony to prove that applicant will be a continuing threat to society. But it is really not possible to say on this basis that the doctor's testimony made no contribution whatsoever to applicant's punishment. Thus, given the standard applied by the Court, I would not find the error to have been harmless.

Still, it occurs to me that we have not really considered what kind of harmless error rule to use in applications for the writ of habeas corpus. Under Texas law, applications for the writ are not cognizable when they attack final criminal convictions unless they complain of defects which render those convictions void. In this event, we do not apply any harmless error rule at all. *See Ex parte Truong*, 770 S.W.2d 810 (Tex.Crim. App.1989). Accordingly, the only circumstance in which we would ever be called upon to evaluate harm in context of an application for writ of habeas corpus attacking a final criminal conviction would be in cases of alleged federal constitutional violations. *See Ex parte Banks*, 769 S.W.2d 539 (Tex.Crim. App.1989).

Rule 81(b)(2), by its very terms, does not apply to applications for habeas corpus. Indeed, it is very much like the harmless error rule prescribed by the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), for evaluating the harmfulness of federal constitutional violations on direct review of state criminal convictions. Interestingly, the Supreme Court does not apply this rule to assess the harmfulness of federal constitutional violations on collateral review of state criminal convictions. In such cases, it holds constitutional violations to be harmful only if they "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (April 21, 1993).

If we adopt a new standard of harm for use in cases of habeas corpus review which is like that adopted by the United States Supreme Court in *Brecht*, the result reached by the Court in this case would be correct. Of course, we are not obliged to adopt such a standard just because the federal courts have done so, even when it comes to questions of federal constitutional errors. *See Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App. 1991). But I believe good reasons exist for relaxing the standard of harmfulness in Texas habeas corpus proceedings which concern alleged federal constitutional violations. In the first place, Texas does not have a greater interest in the vindication of federal constitutional rights than does the United States of America. Because the United States Supreme Court holds that the standard of harm applicable to a review of alleged federal constitutional questions is itself a question of federal constitutional law, it would be anomalous to apply a different standard of harm to the evaluation of such errors in the courts of Texas, whether on direct review or by application for a writ of habeas corpus. Moreover, exacting a greater level of confidence in the impact of errors upon the outcome of trial after the conclusion of direct review is a sensible way of balancing the greater interests of society in the finality of convictions at this stage.

For these reasons, I concur in the judgment of the Court to deny applicant relief in this case.