Justice Alito,
with whom
The Chief Justice, Justice Scalia, and Justice Thomas join, dissenting.
The issue in this case is less complicated than the opinion of the Court suggests. The federal constitutional error that occurred at the penalty phase of petitioner’s trial and that *317 was identified in Smith v. Texas, 543 U. S. 37 (2004) (per curiam) (Smith I), concerned a flaw in the jury instructions: Specifically, the instructions did not give the jury an adequate opportunity to take some of petitioner’s mitigating evidence into account. This error could have been avoided by changing the instructions. Indeed, our opinion in Penry v. Lynaugh, 492 U. S. 302, 322-323 (1989) (Penry I), rather pointedly discussed how proper instructions might be crafted. But defense counsel — facing evidence of aggravating factors that might have led the jury to return a death verdict no matter what instructions were given — never objected to the text of the instructions and declined the trial judge’s invitation to suggest modifications, choosing instead to argue that Penry I precluded Texas from applying its death penalty statute to petitioner at all.
As a result of this failure to object, the Texas Court of Criminal Appeals (TCCA), in the decision now under review, Ex parte Smith, 185 S. W. 3d 455 (2006), held that petitioner could not overturn his death sentence without surmounting a Texas rule that is analogous to the federal “plain error” rule. See United States v. Olano, 507 U. S. 725, 731 (1993). Under this Texas rule, adopted in Almanza v. State, 686 S. W. 2d 157, 171 (Tex. Crim. App. 1984) (en banc), a criminal defendant who fails to object to a jury instruction cannot obtain a reversal simply on the grounds that the instruction was erroneous and the error was not harmless. Rather, the defendant must meet the heightened standard of “egregious harm.” Id., at 174. Finding that the error in petitioner’s case did not meet this heightened standard, the TCCA held that petitioner’s sentence must stand. 185 S. W. 3d, at 467.
Because petitioner failed to raise an objection to the trial court’s attempt to cure the federal constitutional defect in the “special issues,” the TCCA was entitled to apply its stricter Almanza rule, an altogether commonplace type of procedural rule that represents an adequate and independ *318 ent state-law ground for the TCCA’s decision. Accordingly, I would dismiss for want of jurisdiction.
I
A
At the time of petitioner’s trial, Texas statutes provided that the jury at the penalty phase of a capital case had to answer two (and in some cases, three) questions, known as the “special issues.”[1] The two questions that had to be answered in every case were
“(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
“(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.” Tex. Code Crim. Proc. Ann., Art. 37.0711, §§ 3(b)(1) and (2) (Vernon 2006).
If the jury found unanimously that the answer to all the “special issues” was “yes,” then the death sentence was imposed; otherwise, the sentence was life imprisonment. Art. 37.071, § 2(e).
In Jurek v. Texas, 428 U. S. 262 (1976), the Court upheld the facial constitutionality of this scheme, but in Penry I, decided in 1989, the Court held that use of this scheme in Penry’s case violated the Eighth Amendment because evidence of Penry’s mental retardation and severe childhood abuse did not fit adequately into any of the “special issues” as submitted to the jury. With respect to the first of the “special issues,” the Court discussed at some length the pos *319 sibility that an instruction broadly defining the requirement of deliberateness might have permitted sufficient consideration of Penry’s mental retardation and abuse. The Court wrote:
“In the absence of jury instructions defining ‘deliberately’ in a way that would clearly direct the jury to consider fully Penry’s mitigating evidence as it bears on his personal culpability, we cannot be sure that the jury was able to give effect to the mitigating evidence of Penry’s mental retardation and history of abuse in answering the first special issue. Without such a special instruction, a juror who believed that Penry’s retardation and background diminished his moral culpability and made imposition of the death penalty unwarranted would be unable to give effect to that conclusion if the juror also believed that Penry committed the crime ‘deliberately.’ Thus, we cannot be sure that the jury’s answer to the first special issue reflected a ‘reasoned moral response’ to Penry’s mitigating evidence.” 492 U. S., at 322-323 (emphasis added).
Petitioner’s trial took place in 1991 — that is, after Penry I but before Penry v. Johnson, 532 U. S. 782 (2001) (Penry II). At the guilt phase, petitioner was found to have committed an exceptionally brutal and coldblooded murder. Petitioner, a former employee of a fast food restaurant, went with some friends to the restaurant after closing hours when the employees were cleaning up and asked to be admitted to use the phone. The teenage shift manager, Jennifer Soto, let him in and greeted him with a hug. Petitioner followed her to her office and demanded the combination of the safe. Soto told him she did not know the combination, but petitioner beat her on the head with the butt of a gun, demanding the combination and continuing until the gun handle fell off. Petitioner then shot Soto in the back, grabbed a knife from the kitchen and inflicted what were described at trial *320 as numerous “ ‘torture’ wounds,” and finally slit her throat. Brief for Respondent 1.
At the penalty phase, the prosecution relied on evidence showing the brutal nature of the murder, as well as petitioner’s history of violence. The defense offered mitigation evidence, including some that loosely resembled Penry’s, specifically low IQ and evidence of possible organic learning and speech disorders.
As the Court relates, prior to trial petitioner’s attorney contemporaneously filed three motions. The first, citing Penry 7, argued that the “special issues” provided the jury with an inadequate vehicle to consider the mitigating effect of petitioner’s age, and asked the court to declare the Texas capital sentencing scheme unconstitutional as applied to petitioner. 1 App. 7-10. The second motion, also citing Penry I, likewise argued that the Texas death penalty was “unconstitutional because it does not provide for the introduction and subsequent use by the jury of mitigating evidence which is not relevant or material to the special issues.” 1 App. 13. Neither motion requested that the trial judge give jury instructions bringing the Texas scheme into compliance with the Eighth Amendment. Rather, petitioner’s counsel argued that the judge could not provide 11 any instruction with regard to mitigating evidence” that would obviate the constitutional problem. Id., at 9 (emphasis added). The trial judge denied both these motions.
In the third motion, petitioner’s counsel asked for a copy of the “mitigation instructio[n]” that the court planned to give. Id., at 17-19. This motion anticipated that the trial court would issue an instruction to “attempt to resolve the [Penry I] problem.” Id., at 18. The court granted this motion and invited defense counsel to offer suggested revisions. But although Penry I had explained how the jury instructions might be modified to obviate the error found in that case — i. e., by broadly defining the term “deliberately” in the first “special issue,” 492 U. S., at 322-323 — and despite the *321 fact that all involved understood that the trial judge’s proposed instruction was intended to cure the Penry I problem, petitioner’s counsel did not object that the proposed mitigation instructions were inadequate to cure the defect in the “special issues.” Rather, faced with the aggravating factors noted above, petitioner maintained that any submission of the “special issues” to the jury, regardless of any additional instructions given, would violate Penry I.
Hearing no objection to the instructions, the trial judge went ahead and gave the instructions that he had proposed. After instructing the jury on the relevant “special issues,” the judge also gave a supplemental “mitigation” or “nullification” instruction. This instruction told the jurors that they should take into account any evidence that they viewed as mitigating and that if this evidence convinced them that the defendant should not be sentenced to death, they should answer “no” to one of the “special issues.” Instructed in this way, the jury returned a death verdict.
As our subsequent opinions in Penry II and Smith I held, the “nullification” instruction did not obviate the problem found in Penry I. Similar instructions were at issue in both Penry II and Smith I, and in both cases the Court held that this approach was flawed, noting that the instructions on the “special issues” and the supplemental or “nullification” instructions were conflicting and that the conflict created an “ethical problem” for the jurors because they were “ ‘essentially instructed to return a false answer to a special issue in order to avoid a death sentence.’ ” Smith I, 543 U. S., at 47-48 (quoting Penry II, supra, at 801).
On remand after Smith I, the TCCA, in the relevant portion of its opinion, addressed the question whether petitioner was entitled to reversal of his death sentence based on the federal constitutional error found in this Court’s per curiam opinion. 185 S. W. 3d, at 467-468. The TCCA, having noted that petitioner did not object to the nullification instruction, id., at 461, applied the unpreserved error prong of *322 its Almanza rule, which represents the TCCA’s interpretation of a provision of the Texas Criminal Code addressing the review of claimed errors in jury instruction. 185 S. W. 3d, at 467-468. Under Almanza, once it is established that there was error in a jury instruction,
“ 'the next step is to make an evidentiary review ... as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused.’ If the defendant failed to object to the jury charge, he must show that the error caused him such egregious harm that he did not have ‘a fair and impartial trial.’ ” 185 S. W. 3d, at 464 (quoting Almanza, 686 S. W. 2d, at 174).
Finding that the error in this case had not produced the requisite “egregious harm,” the TCCA held that petitioner’s death sentence must stand.
B
The Court today concludes that the federal constitutional error that we identified in Smith I was the very error that petitioner asserted in his pretrial motions, ante, at 305, but this holding is incorrect. While petitioner did argue that the “special issues” precluded the jury from considering his mitigating evidence, he never argued that the trial judge’s proposed instructions were insufficient to cure that defect. It was perfectly reasonable for the TCCA to hold that, by failing to object to the cure, petitioner has not preserved a claim that the cure was ineffective.
This case perfectly illustrates the wisdom of such a rule. We have never held that no instruction is capable of curing the Penry I problem with the “special issues.” Indeed, we have suggested that the problem could have been avoided if the trial judge had not instructed the jury to give a false answer to one of the “special issues” but had instead taken the course discussed in Penry I — defining the term “deliber *323 ately” as used in the first “special issue” in a way that was broad enough to permit consideration of the relevant mitigating evidence. 492 U. S., at 322-328. However, the trial court never thought to take this route because petitioner never argued that the nullification instruction was inadequate to satisfy federal law. Preventing the TCCA from applying plain-error review in these circumstances is tantamount to holding that petitioner had a federal right to sandbag the trial court.
II
Once it is recognized that petitioner did not preserve an objection to the federal adequacy of the trial judge’s proposed instructions, there are several remaining questions that must be considered. Because the Court does not address these, I address them in abbreviated form.
A
The first is whether the TCCA was precluded from applying the Almanza rule in the decision now under review because the TCCA did not invoke that state-law ground in Ex parte Smith, 132 S. W. 3d 407 (2004), the decision that was reversed by this Court in Smith I. Petitioner accuses the TCCA of engaging in “an impermissible ‘bait and switch,’” “an unacceptable manipulation of its procedural rules to defeat this Court’s adjudication of [petitioner’s] Penry claim,” and “nothing less than an opportunistic invocation of state law to avoid compliance with this Court’s decision.” Brief for Petitioner 43-44.
This argument unjustifiably impugns the good faith of the TCCA and rests on a fundamentally flawed premise, namely, that the majority of the TCCA in its 2004 decision tacitly held that petitioner’s claim regarding the jury instructions had been fully preserved. In the 2004 decision, however, the TCCA majority said nothing whatsoever on this point, choosing instead to reject the claim on the merits. While four concurring judges argued that petitioner had procedur *324 ally defaulted this claim, Ex parte Smith, 132 S. W. 3d, at 423-424 (opinion of Hervey, J.); id,., at 428 (opinion of Holcomb, J.), the majority did not respond and was under no obligation to do so. Nor was the majority under any obligation to decide the preservation issue before addressing the merits. There are a few nonmerits issues that a court must address before proceeding to the merits, see, e. g., Steel Co. v. Citizens for Better Environment, 523 U. S. 83 (1998) (holding that a federal court generally must assure itself of its jurisdiction before proceeding to the merits), but petitioner does not argue that error preservation is regarded in this way under Texas law.
In the absence of any legal obligation to consider a preliminary nonmerits issue, a court may choose in some circumstances to bypass the preliminary issue and rest its decision on the merits. See, e. g., 28 U. S. C. § 2254(b)(2) (federal habeas court may reject claim on merits without reaching question of exhaustion). Among other things, the court may believe that the merits question is easier, and the court may think that the parties and the public are more likely to be satisfied that justice has been done if the decision is based on the merits instead of what may be viewed as a legal technicality. Thus, the TCCA’s 2004 opinion cannot be read as holding that petitioner’s jury instructions argument was unencumbered with procedural defects or limitations.
Even if that earlier TCCA decision did not hold that petitioner’s jury instructions argument was properly preserved, petitioner suggests that where a state court originally rejects a federal claim on the merits and that decision is reversed by this Court, the state court may not impose the state-law procedural bar on remand to reach the same result. But whether it may be advisable for state courts to apply state law before reaching federal constitutional questions, see Massachusetts v. Upton, 466 U. S. 727, 736 (1984) (Stevens, J., concurring in judgment), we have never held that *325 States are required to follow this sequence. And in cases in which this Court has reversed a state-court decision based on a possible federal constitutional violation, it is not uncommon for the state court on remand to reinstate the same judgment on state-law grounds. See id., at 735, n. 2. See also State v. Wedgeworth, 281 Kan. —, 127 P. 3d 1033 (2006) (per curiam) (concluding on reconsideration that hearsay statements were unobjected to and harmless); Saldano v. State, 70 S. W. 3d 873, 890 (Tex. Crim. App. 2002) (en banc) (concluding on remand that error confessed in this Court had not been preserved for appellate review); State v. Hallum, 606 N. W. 2d 351, 353 (Iowa 2000) (concluding on remand that defendant had forfeited his right to invoke the confrontation clause because he had procured the witness’ unavailability at trial in the first instance); Gaskin v. State, 615 So. 2d 679, 680 (Fla. 1993) (holding on remand in a capital proceeding that defendant had failed to object properly to unconstitutionally vague aggravating factors instruction); Happ v. State, 618 So. 2d 205, 206 (Fla. 1993) (per curiam) (same); Booker v. State, 511 So. 2d 1329, 1331 (Miss. 1987) (holding on remand that defendant failed to object contemporaneously to prosecutor’s statements).
B
The second question is whether the Almanza “egregious harm” standard is an adequate and independent state ground sufficient to support a state judgment that precludes consideration of a federal right. Coleman v. Thompson, 501 U. S. 722, 729 (1991). I am satisfied that it is.
In order to be “adequate,” a state rule must be a “firmly established and regularly followed state practice,” and should further a legitimate state interest. James v. Kentucky, 466 U. S. 341, 348-349 (1984). The Almanza “egregious harm” rule meets these requirements. In Almanza, the TCCA exhaustively reviewed the history of the Texas *326 statute[2] governing objections to jury-charge error. 686 S. W. 2d, at 160-161. The court concluded that the statute imposed a two-part standard: If there was a timely objection at trial, the objecting party need show only “some harm”; but if no proper objection was made the party claiming error must demonstrate that the “error is so egregious and created such harm that he has not had a fair and impartial trial— in short, egregious harm.” Id., at 171 (internal quotation marks omitted; emphasis deleted).
Petitioner argues that the Almanza standard is not adequate but rather is arbitrary and discretionary for three reasons: that it was intended to be applied on direct review, not on habeas review; that it was intended to control only nonconstitutional claims; and that it has not been applied to Penny claims. Brief for Petitioner 47, n. 16. None of these grounds is borne out.
Immediately following Almanza, the TCCA applied it in state habeas proceedings. See Ex parte Tuan Van Truong, 770 S. W. 2d 810, 813 (1989) (en banc) (per curiam); Ex parte Patterson, 740 S. W. 2d 766, 776-777 (1987) (en banc); Ex parte White, 726 S. W. 2d 149, 150 (1987) (en banc); Ex parte Maldonado, 688 S. W. 2d 114, 116 (1985) (en banc).[3] *327 Moreover, the TCCA has applied Almanza in cases raising Penry-type claims, which are, of course, based on the Eighth Amendment. See, e. g., Turner v. State, 87 S. W. 3d 111, 117 (2002) (showing of “egregious harm” required by statute to support claim that unobjected-to jury-charge error restricted jury’s consideration of mitigating evidence); Ovalle v. State, 13 S. W. 3d 774, 786 (2000) (en banc) (per curiam) (applying Almanza to preserved mitigation charge error); Cantu v. State, 939 S. W. 2d 627, 647-648 (1997) (en banc) (citing Almanza for requirement that unobjected-to claim of mitigation charge error is waived but for “egregious error”); Coleman v. State, 881 S. W. 2d 344, 356-357 (1994) (en banc) (citing Almanza in rejecting claim of Penry error); Flores v. State, 871 S. W. 2d 714, 723 (1993) (en banc) (citing Almanza in connection with a reverse-Penry error claim, that giving a mitigation charge was inappropriate where defendant intentionally forewent introducing any mitigating evidence).
The Almanza rule was adopted in 1986, six years prior to petitioner’s 1991 trial. That the TCCA has not cited Almanza in every single case regarding jury-charge error is not dispositive. Unlike the jurisprudential novelties at issue in Ford v. Georgia, 498 U. S. 411 (1991), and NAACP v. Alabama ex rel. Patterson, 357 U. S. 449, 457-458 (1958), it was unremarkable at the time of petitioner’s trial, and equally unremarkable today, that the TCCA would apply those standards to govern his claim of instructional error.
Finally, the Almanza rule, in imposing a contemporaneous-objection requirement, serves a well-recognized and legitimate state interest: avoiding flawed trials and minimizing costly retrials. See Coleman, supra, at 746; United States v. Young, 470 U. S. 1 (1985). Accord, Fed. Rules Crim. Proc. 51(b) and 52(b). This case itself bears out the basis for such a rule. Despite being directly solicited for suggested changes by the trial judge, petitioner never once objected to the text of the jury instructions. Knowing full well that the *328 trial court believed that the nullification charge had cured the Penry I error inherent in the “special issues/’ petitioner’s attorney elected to sit quietly by. Because the Almanza rule is regularly followed and serves important state interests, it is an “adequate” state ground.
The Almanza rule is also “independent” of federal law. The determination by the TCCA that petitioner failed to object to the nullification instruction, and was therefore required to prove “egregious harm,” rested purely on state statutory law.
C
Finally, I consider petitioner’s argument that the grounds on which the TCCA relied in concluding that petitioner was not entitled to relief under Almanza were inconsistent with the Smith I mandate, most notably because, while Smith I held that the “nullification” instruction did not eliminate the Eighth Amendment problem identified in Penry I, the TCCA noted on remand that the jurors’ statements during voir dire suggested that they would be able to take all mitigating evidence into account in rendering their verdict. See 185 S. W. 3d, at 468.
Petitioner’s argument confuses the question decided in Smith I (whether the jury instructions violated the Eighth Amendment) with the separate - question decided by the TCCA on remand (whether the instructions caused “egregious harm”). A penalty phase instruction violates the Eighth Amendment if “there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.” Boyde v. California, 494 U. S. 370,380 (1990). But as we made clear in Calderon v. Coleman, 525 U. S. 141, 147 (1998) (per curiam), “[t]he Boyde analysis does not inquire into the actual effect of the error on the jury’s verdict; it merely asks whether constitutional error has occurred.” Texas law similarly bifurcates these inquiries. In Almanza, the TCCA held that
*329 “finding error in the court’s charge to the jury begins— not ends — the inquiry; the next step is to make an evidentiary review [of the whole record to] illuminate the actual, not just [the] theoretical, harm to the accused.” 686 S. W. 2d, at 174.[4]
At this stage, Texas law may well be more forgiving than federal law. Under Almanza, a petitioner seeking a reversal for unpreserved instructional error must show that the error deprived him of a “fair and impartial trial,” working “egregious harm.” Ibid. By contrast, under Olano, 507 U. S., at 734-735, in federal court unpreserved error merits reversal only when it constitutes “plain error.” But whatever the standard, it is clear that this Court’s finding of constitutional penalty phase error in Smith I in no way foreclosed the second and subsequent step, undertaken by the TCCA on remand, of determining whether that error required reversal. Accordingly, the TCCA’s Almanza analysis does not conflict with the Smith I mandate.
For these reasons, I would dismiss for want of jurisdiction.

 A third “special issue” applies when the evidence raises the question whether the killing was provoked by the deceased. See Tex. Code Crim. Proc. Ann., Art. 37.071, § (2)(b) (Vernon Supp. 1992). In petitioner’s case, that “special issue” was inapplicable.

 At the time of Almanza, the Texas Code of Criminal Procedure of 1965 Annotated, Article 36.19, provided: “Whenever it appears by the record in any criminal action upon appeal that any requirement [regarding certain jury instructions] has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of the trial.” This provision continues in effect unamended through the present day. See ibid. (Vernon 1991).

 Petitioner argues that Texas has not applied Almanza in habeas proceedings more recently. But petitioner fails to cite any case where Texas has applied a more permissive form of review to such a claim in state habeas proceedings, nor would it be logical for Texas to afford more deferential review in habeas proceedings than on direct review.

 Reading the TCCA’s more recent decision in Penry v. State, 178 S. W. 3d 782 (2005), to mean that Texas law requires resentencing upon a finding of preserved jury instruction error, the Court in this case effectively orders the TCCA to require petitioner to be resentenced. Ante, at 315-316. Because the TCCA is better equipped than are we to analyze and apply Texas law, I would leave application of its procedural default rules to that court.