## CONTRACT FOR EDITORIAL NEUTRALITY OF A NEWSPAPER INVALID.

Court of Appeals for Scioto County.

MILLER v. GLOCKNER ET AL.

Decided, November 20, 1913.

*Contracts—Corrupt Practices Act Violated by Agreement Whereby Neutrality of Newspaper Was Purchased and Paid for With Advertising —Acts of Agent—Principal Can Not Ratify and Recover, When.*

1. A contract providing for the editorial neutrality of a newspaper, relating to a policy to be voted upon at a public election, is void as being against public policy and in violation of the state corrupt practices act.

2. An agreement to pay an agreed price per inch for advertisements on consideration that the newspaper would print the same for that price and remain neutral during the campaign is not divisible, but is an entire contract. In such case one of the considerations being illegal, the entire contract is void.

3. Where the newspaper's agent enters into such an agreement with another, without authority from his principal, the latter can not affirm a part of such contract and disaffirm the balance, and since recovery is predicated on such contract the principal's action must fail.

*A. H. Bannon,* for plaintiff in error.
*Miller, Milner & Searl,* contra.

In the court of common pleas William M. Miller, the owner of a newspaper printed in Scioto county called the *Blade,* brought an action against the defendant in error and some two hundred others upon an account for space furnished the defendants for advertising purposes. The petition alleged that the advertising space was sold to the defendants at their instance and request, and they agreed to pay the price named in the account.

In their amended answer the defendants allege that the actual contract between them and the newspaper was that they were to pay the price agreed upon and that, as a part consideration therefor, plaintiff's newspaper would be and remain entirely neutral during the campaign upon a wet and dry issue which was to follow..

The facts, as appear from the record, show that the defendants had organized in the city of Portsmouth what was known as "the Business Men's League of Scioto County, Ohio." This league was conducting the wet side of the campaign, which was to end on October 26, 1911. A man by the name of Weaver solicited advertising matter from the Business Men's League, and an agreement resulted by which the league was to furnish advertising matter to the *Blade* at the same price they were paying the Portsmouth *Times*, a newspaper of the same city. The newspaper also was to remain neutral during the entire campaign. For these two considerations the Business Men's League agreed to advertise in the *Blade* and to pay the price agreed upon. No question is here made as to the price charged in the account, but it appears that about nineteen days before the campaign ended the *Blade* violated its obligations of neutrality and became an advocate of the dry cause.

This case was tried to the court without the intervention of a jury, and the judgment below was on behalf of the defendant.

JONES (THOMAS A.), J.; WALTERS, J., and SAYRE, J., concur.

The first question that arises upon the record is: Was the agreement upon the part of the newspaper to remain neutral during the campaign void?

The newspaper is an important factor in molding public opinion. Its patronage largely depends upon its advocacy of policies sanctioned by its readers. By reason of its high position in our political economy its views on questions of private and public morality are stamped upon the individual. Often it does the latter's thinking, and very often its editorial policies find expression in the voter's ballot. The public policy, therefore, would require that its conscience could not be subject to barter, especially on those questions affecting the electorate. Buying its neutrality on election issues is as reprehensible as a purchase of its active editorial policy.

There are a large number of authorities in cases analogous to this which hold that the purchase of newspaper influence outright in behalf of the candidacy of a particular person is void as against public policy. And there is all the more reason to hold

judicially that the secret purchase of the editorial influence of a newspaper is void for the same reason.

This view has been upheld by the Supreme Court of Vermont, in 1902, in the case of *Livingston* v. *Page*, 74 Vt., 356 (59 L. R. A., 336).

We hold, therefore, that that portion of the contract between the parties which bound the *Blade* to observe neutrality during the wet and dry campaign was void at common law as against public policy. In addition to this, we are also of the opinion that it was in violation of the corrupt practices act of Ohio (102 O. L., 327, Section 26).

That act provides that any person is guilty of corrupt practices if he directly or indirectly promises to pay money or other valuable consideration for any other purpose than the matters therein stated. In relation to newspaper advertising one of the matters therein stated is for "the pay of newspapers for advertisements, pictures, reading matter and additional circulation."

In the construction of this act the maxim "*expressio unius exclusio alterius est*" may be applied in this case, and would seem to negative any other act in connection with the payment of money to the newspapers. However, the section closed with the provision that any payment whatsoever, except as therein provided, is declared to be corrupt practice.

The provision that the newspaper should maintain its neutrality being void, was the whole contract void? This depends on whether the consideration was divisible or entire. A consideration on the part of the defendants was the payment of the same rate as the *Times* charged for such printing. For this the newspaper was to prnt it for the same price charged by the *Times* and was to remain neutral during the campaign. The plaintiff was to do both for the price promised. How much of the price was for the advertising and how much for its neutrality can not possibly be determined. It is impossible to separate them.

Authorities supporting this view in analogous cases are numerous. The following cases arose out of divisible contracts, and where the considerations were separable the actions were sustained (*Widoe* v. *Webb*, 20 Ohio St., 431; *State, ex rel,* v. *Board of Education*, 35 Ohio St., 519). Plaintiff in error relies

on the dictum of Scott, C. J., in the former case, where, on page 435, he says:

''When, however, for a legal consideration, a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful, and void for the residue.''

Counsel then argue that, since the promise of the defendants to pay was lawful, if one of plaintiff's acts was lawful and the other unlawful, the contract is good for so much as is lawful.

The weakness of this lies in the fact of inability to separate the lawful and unlawful acts which formed the inducement to pay.

The dictum just advocated must be construed in view of the case decided, where the price paid for the lawful and unlawful acts could be separated, for the jurist states the converse of the proposition as to entire contracts as follows:

''Whenever the unlawful part of the contract can be separated from the rest it will be rejected, and the remainder established. But this can not be done when one of two or more considerations is unlawful, whether the promise to be to do one lawful act, or two or more acts, part of which are unlawful; because the whole consideration is the basis of the whole promise. The parts are inseparable.''

That the neutrality illegally contracted for was a valuable inducement for the promise of the defendants is beyond question; but the value of that neutrality was not fixed by the parties, nor can it be separated in the price contracted for.

One question presented in the case was whether the agent, Weaver, in acting for the newspaper acted without authority and without the scope of his employment. Touching this question various exceptions were taken by the plaintiff below, but in our view of the case this question becomes immaterial and it is unnecessary to decide, upon the record, whether the agent was in fact acting within the scope of his authority. The action was brought by his principal upon an express contract for' an agreed price which the defendants promised to pay. The' amended answer concedes the agreement as to price, but alleges that a part of the consideration was that the newspaper should remain neutral during the entire campaign. The newspaper did

accept the advertisements and remained neutral for the period of about one month, but on October 7, nineteen days before the end of the wet and dry campaign, it actively espoused the dry cause.

Since the action was predicated upon an express contract made by the principal's agent, and since a portion of the consideration passing under the contract to the defendant was legal and a part illegal, and the consideration inseparable, we are unable to see how the plaintiff can maintain his action upon the contract. There was no meeting of minds upon the part of the defendants in relation to any other contract than that made by the agent. It is this contract on which plaintiff has predicated his recovery, and in this character of a suit he will not be permitted to ratify a portion of it and disaffirm the balance, if the contract is entire.

Whether plaintiff knew before the bringing of his action that his agent had made an illegal contract is only inferentially proven by the record. If he had this knowledge when he filed his action this case would be upon the same plane as that reported in one of the leading cases on agents, *Shoninger* v. *Peabody,* 57 Conn., 42. That case cites the case of *Billings, Taylor & Co.* v. *Mason,* 80 Me., 496, which comments on the right to predicate an action on a contract in cases of this kind. Whether plaintiff knew that part of the contract was illegal at the time of his action or not seems to us immaterial, for the reason that since the real contract was brought into the case by the amended answer of the defendants he is attempting to obtain the relief of the court, upon the facts related, by reason of an express contract made by his agent with the defendants.

Since one of the considerations which the newspaper was to perform could not be apportioned we are unable to see how the principal can obtain relief from this court by an attempted ratification of a portion of a contract of this character.

For the reason stated it is not necessary to pass upon the question of fact whether the agent exceeded his authority in making the illegal stipulation in the contract and whether the court below erred in the rejection of testimony touching that issue.

The judgment of the court of common pleas will be affirmed.

Judgment affirmed.