(Slip Opinion) OCTOBER TERM, 2006 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SMITH *v.* TEXAS

CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS

No. 05–11304.   Argued January 17, 2007—Decided April 25, 2007

Smith's trial took place in the interim between *Penry* v. *Lynaugh*, 492 U. S. 302 *(Penry I)*, and *Penry* v. *Johnson*, 532 U. S. 782 *(Penry II)*. At that time, Texas capital juries were still given the special-issue questions found constitutionally inadequate in *Penry I*.  Texas courts attempted to cure that inadequacy by instructing the jury that if it felt death should not be imposed but also felt the special issues satisfied, it should falsely answer "no" to one of the special-issue questions, thus nullifying the special issues.  This nullification charge was later found inadequate to cure the special issues in *Penry II*.  Before his trial, Smith objected to the constitutionality of the special issues, but his challenges were denied.  At sentencing, Smith's jury received the special issues and the nullification charge.  The jury sentenced Smith to death.  In his appeal and postconviction state proceedings, Smith continued to argue his sentencing was unconstitutional because of the defects in the special issues.  At each stage, the argument was either rejected on the merits, or else held procedurally barred because it had already been addressed on direct appeal.  The Texas Court of Criminal Appeals (hereinafter appeals court) affirmed the denial of relief, distinguishing Smith's case from the *Penry* precedents.  This Court reversed, *Smith* v. *Texas*, 543 U. S. 37 *(per curiam) (Smith I),* finding there was *Penry* error and that the nullification charge was inadequate under *Penry II*.  On remand, the appeals court denied relief once more.  Relying on its *Almanza* decision, it held that Smith had not preserved a *Penry II* challenge to the nullification charge*,* since he only made a *Penry I* challenge at trial; and that this procedural defect required him to show not merely some harm, but egregious harm, a burden he could not meet.

*Held:*

   1. The appeals court made errors of federal law that cannot be the

predicate for requiring Smith to show egregious harm. *Smith I* confirmed that the special issues did not meet constitutional standards and that the nullification charge did not cure that error. The basis for relief was error caused by the special issues, not some separate error caused by the nullification charge. On remand from *Smith I*, the appeals court mistook this Court's holding as granting relief in light of an error caused by the nullification charge and concluded that Smith had not preserved that claim because he never objected to the nullification charge. Although Smith's second state habeas petition included an argument that the nullification charge itself prevented the jury from considering his mitigating evidence, that was not the only, or even the primary, argument he presented to the appeals court and this Court. The parties' post-trial filings, the state courts' judgments, and *Smith I* make clear that Smith challenged the special issues before trial and did not abandon or transform that claim during lengthy post-trial proceedings. Regardless of how the State now characterizes it, Smith's pretrial claim was treated by the appeals court as a *Penry* challenge to the adequacy of the special issues in his case, that is how this Court treated it in *Smith I*, and that was the error on which this Court granted relief. The appeals court's misinterpretation of federal law on remand from *Smith I* cannot form the basis for the imposition of an adequate and independent state procedural bar. *Ake* v. *Oklahoma*, 470 U. S. 68, 75. Pp. 15–17.

2. The state courts that reviewed Smith's case did not indicate that he failed to preserve his claim that the special issues were inadequate in his case. Under the appeals court's application of *Almanza*, preserved error is subject only to normal harmless-error review. The appeals court has indicated elsewhere that so long there is a reasonable likelihood the jury believed it was not permitted to consider relevant mitigating evidence, the lower *Almanza* standard is met. Because the state court must defer to this Court's finding of *Penry* error, which is a finding that there is a reasonable likelihood the jury believed it was not permitted to consider Smith's relevant mitigating evidence, *Johnson* v. *Texas*, 509 U. S. 350, 367, it appears Smith is entitled to relief under the state harmless-error framework. Pp. 18–19.

185 S. W. 3d 455, reversed and remanded.

KENNEDY, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and BREYER, JJ., joined. SOUTER, J., filed a concurring opinion. ALITO, J., filed a dissenting opinion, in which ROBERTS, C. J., and SCALIA and THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No.  05–11304

———

## LAROYCE LATHAIR SMITH, PETITIONER *v.* TEXAS

ON WRIT OF CERTIORARI TO THE COURT OF CRIMINAL
APPEALS OF TEXAS

[April 25, 2007]

JUSTICE KENNEDY delivered the opinion of the Court.

The jury in a Texas state court convicted petitioner LaRoyce Lathair Smith of first-degree murder and determined he should receive a death sentence. This Court now reviews a challenge to the sentencing proceeding for a second time.

The sentencing took place in the interim between our decisions in *Penry* v. *Lynaugh*, 492 U. S. 302 (1989) *(Penry I)*, and *Penry* v. *Johnson*, 532 U. S. 782 (2001) *(Penry II)*. In *Penry I* the Court addressed the special-issue questions then submitted to Texas juries to guide their sentencing determinations in capital cases. The decision held that the Texas special issues were insufficient to allow proper consideration of some forms of mitigating evidence. Following a pretrial challenge to the special issues by Smith, the trial court issued a charge instructing the jury to nullify the special issues if the mitigating evidence, taken as a whole, convinced the jury Smith did not deserve the death penalty. After Smith's trial, *Penry II* held a similar nullification charge insufficient to cure the flawed special issues. Smith, on state collateral review, continued to seek relief based on the inadequacy of the special issues,

arguing that the nullification charge had not remedied the problem identified in his pretrial objection. The Texas Court of Criminal Appeals affirmed the denial of relief, distinguishing Smith's case from the *Penry* precedents. *Ex parte Smith*, 132 S. W. 3d 407 (2004).

This Court, by summary disposition, reversed. *Smith* v. *Texas*, 543 U. S. 37 (2004) *(per curiam) (Smith I)*. On remand the Court of Criminal Appeals again denied Smith relief. It held, for the first time, that Smith's pretrial objections did not preserve the claim of constitutional error he asserts. Under the Texas framework for determining whether an instructional error merits reversal, the state court explained, this procedural default required Smith to show egregious harm—a burden the court held he did not meet. *Ex parte Smith*, 185 S. W. 3d 455, 467–473 (Tex. Crim. App. 2006). The requirement that Smith show egregious harm was predicated, we hold, on a misunderstanding of the federal right Smith asserts; and we therefore reverse.

## I

## A

### *The Special Issues*

Under Texas law the jury verdict form provides special-issue questions to guide the jury in determining whether the death penalty should be imposed. At the time of Smith's trial, Texas law set forth three special issues. The first addressed deliberateness; the second concerned future dangerousness; and the third asked whether the killing was an unreasonable response to provocation by the victim. Provocation was not applicable to Smith's case so the third question was not included in the instructions. If the jury answered the two applicable special-issue questions in the affirmative, the death penalty would be imposed.

In *Penry I*, the Court held that neither of these special-

issue instructions was "broad enough to provide a vehicle for the jury to give mitigating effect" to the evidence at issue in that case. *Penry II, supra*, at 798 (citing, and characterizing, *Penry I, supra*, at 322–325). We refer to the inadequacy of the special issue instructions as "*Penry* error."

For the brief period between *Penry I* and the Texas Legislature's addition of a catchall special issue, Texas courts attempted to cure *Penry* error with a nullification charge. In Smith's case the trial court instructed that if a juror was convinced the correct answer to each special-issue question was "yes," but nevertheless concluded the defendant did not deserve death in light of all the mitigating evidence, the juror must answer one special-issue question "no." The charge was not incorporated into the verdict form. See, *e.g.,* 1 App. 123–124. In essence the jury was instructed to misrepresent its answer to one of the two special issues when necessary to take account of the mitigating evidence.

In *Penry II*, the Court concluded that a nullification charge created an ethical and logical dilemma that prevented jurors from giving effect to the mitigating evidence when the evidence was outside the scope of the special issues. As the Court explained, "because the supplemental [nullification] instruction had no practical effect, the jury instructions . . . were not meaningfully different from the ones we found constitutionally inadequate in *Penry I.*" 532 U. S., at 798. In other words, *Penry II* held that the nullification charge did not cure the *Penry* error.

*Penry II* and *Smith I* recognized the ethical dilemma, the confusion, and the capriciousness introduced into jury deliberations by directing the jury to distort the meaning of an instruction and a verdict form. *Penry II, supra*, at 797–802; *Smith I, supra*, at 45–48. These are problems distinct from *Penry* error and may be grounds for reversal as an independent matter; but we need not reach that

issue here, just as the Court did not need to reach it in
*Penry II* or *Smith I*.

When this Court reversed the Court of Criminal Appeals
in *Smith I*, it did so because the nullification charge had
not cured the underlying *Penry* error. See *Smith I*, 543
U. S., at 48 (holding that "the burden of proof . . . was tied
by law to findings of deliberateness and future dangerous-
ness that had little, if anything, to do with" the mitigating
evidence). While the ethical and logical quandary caused
by the jury nullification charge may give rise to distinct
error, this was not the basis for reversal in *Smith I*. On
remand the Court of Criminal Appeals misunderstood this
point. Its interpretation of federal law was incorrect.

In light of our decision in *Smith I*, our review of the
facts need not restate the brutality of the murder Smith
committed or the evidence he offered in mitigation. See
*id.*, at 38–43. We need only address the conclusion of the
Court of Criminal Appeals that the constitutional error
asserted by Smith was caused by the nullification charge
and that, having failed to alert the trial court to that error,
Smith was required to demonstrate egregious harm to
obtain relief.

## B

### *The Trial*

Before *voir dire*, Smith filed three written motions
addressing the jury instructions. In the first, he argued
that *Jurek* v. *Texas*, 428 U. S. 262 (1976), and *Penry I*
established the constitutional inadequacy of the special
issues. The motion maintained that Texas law denied the
trial court power to cure the problem because "[t]he exclu-
sive methodology for submission to the jury of special
issues with regard to infliction of the death penalty [is]
contained in" Article 37.071 of the Texas Code of Criminal
Procedure Annotated (Vernon 2006 Supp. Pamphlet),
which did not authorize the trial court to add an addi-

tional special issue on mitigation. 1 App. 9. The trial court, the objection stated, would not be able to provide "any instruction with regard to mitigating evidence which would permit the jury to make a moral reasoned response to" mitigating evidence not covered by the special issues. *Ibid.* Smith would offer such evidence.

The second pretrial motion raised a related but distinct argument. Smith began by noting that in *Jurek* the Supreme Court had found Article 37.071 constitutional on its face. He argued, however, it did so with the understanding that the Texas courts would give broad construction to terms in the special issues such as "'deliberately.'" 1 App. 12. They had not done so and therefore "[t]here [was] no provision in Texas for the jury to decide the appropriateness of the death penalty taking into consideration the personal moral culpability of the [d]efendant balanced by mitigating evidence which is not directly or circumstantially probative in answering the special issues." *Id.,* at 13. Smith therefore reasoned that Article 37.071 was unconstitutional.

The third pretrial motion asked the court to state the contents of the mitigation charge prior to *voir dire* so Smith could exercise his jury challenges intelligently. *Id.,* at 17–19.

The trial court denied the first two motions. *Id.,* at 21. In response to the third it provided Smith a copy of its proposed mitigation charge. That charge, which we will refer to as "the nullification charge," defined mitigating evidence broadly before explaining to the jury, in relevant part:

> "[I]f you believe that the State has proved beyond a reasonable doubt that the answers to the Special Issues are 'Yes,' and you also believe from the mitigating evidence, if any, that the Defendant should not be sentenced to death, then you shall answer at least one

of the Special Issues 'No' in order to give effect to your belief that the death penalty should not be imposed due to the mitigating evidence presented to you. In this regard, you are further instructed that the State of Texas must prove beyond a reasonable doubt that the death sentence should be imposed despite the mitigating evidence, if any, admitted before you." *Smith I, supra*, at 40 (internal quotation marks and citation omitted).

The nullification charge did not define or describe the special issues. 1 App. 105–110. The judge told counsel: "If you see something in that charge that you'd like worded differently or you think could be made clearer or better, I'm always willing to entertain different wording or different ways of putting the idea. So if you come up with something you like better, just let me know and I'll look at it." *Id.,* at 21. Smith raised no additional objection and did not suggest alternative wording for the nullification charge.

The jury received the nullification charge from the judge, but the verdict form did not incorporate it. The form was confined to the special issues of deliberateness and future dangerousness. *Id.,* at 123–124. The jury unanimously answered "yes" to both special-issue questions, and Smith was sentenced to death.

## C

### *Post-Trial Proceedings*

The State does not contest the validity of Smith's challenge to the special issues in his pretrial motion. It does contend that since Smith did not object to the nullification charge, his state habeas petition rests on an unpreserved claim, namely that the nullification charge excluded his mitigating evidence. The State's formulation of the federal right claimed by Smith, a formulation accepted by the Court of Criminal Appeals, is based on an incorrect read-

ing of federal law and this Court's precedents. Considering Smith's first two pretrial motions together, as the trial court did, it is evident Smith's objection was that the special-issue framework violated the Eighth Amendment because it prevented the court from formulating jury instructions that would ensure adequate consideration of his mitigating evidence. This framework failed because the special issues were too narrow, the trial court was unable to promulgate a new catchall special issue, and the Texas courts did not define "deliberately" in broad terms. The State is correct that this was an objection based on *Penry* error, not one based on the confusion caused by the nullification instruction.

A review of Smith's post-trial proceedings shows that the central argument of his habeas petition, and the basis for this Court's decision in *Smith I*, is the same constitutional error asserted at trial.

1

*Direct Appeal*

On direct appeal from the trial court, Smith renewed his argument that the special issues were unconstitutional:

"[I]n *[Penry I]*, the Supreme Court held that there was an Eighth Ame[n]dment violation where there was mitigating evidence not relevant to the special verdict questions, or that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions, and the jury instructions would have provided the jury with no vehicle for expressing its reasoned moral response to that evidence.

.      .      .      .      .

"By its extremely narrow interpretation of the requirements of *Penry*, this Court has unconstitutionally narrowed the sentencer's discretion to consider relevant mitigating evidence . . . . The special issues . . . do not in reality provide a vehicle for individual-

ized consideration of the appropriateness of assess-
ment of the death penalty and [the article establishing
them] is unconstitutional as applied." 1 App. 133–
134.

Both the Court of Criminal Appeals, in its most recent
opinion, and the State, in its brief on direct appeal, recog-
nized Smith's pretrial motions preserved this argument.
185 S. W. 3d, at 462, and n. 9 (holding Smith's direct-
appeal argument that "the jury was unable to give effect to
his mitigating evidence in answering the special issues"
was "based upon his pretrial motion"); Brief for Texas in
No. 71,333 (Tex. Crim. App.), p. 62, Record 674 ("[Smith]
reiterates his [pretrial] claim that the statute is unconsti-
tutional as applied since it fails to provide an effective
vehicle for the jury to apply mitigating evidence").

In its opinion affirming the sentence on direct review
the Court of Criminal Appeals held that the "instruction
complied with *Penry* and provided a sufficient vehicle for
the jury to consider any mitigating evidence [Smith] of-
fered." *Smith* v. *State*, No. 71,333 (Tex. Crim. App., June
22, 1994), p. 11, 1 App. 147.

### 2

### *First and Second State Habeas*

In 1998, Smith sought state habeas relief. Under state
law the petition was untimely. The Court of Criminal
Appeals, over a dissent, rejected an argument that neglect
by Smith's counsel merited equitable tolling. *Ex parte
Smith*, 977 S. W. 2d 610 (Tex. Crim. App. 1998) (en banc);
see *id.*, at 614 (Overstreet, J., dissenting). Texas then
amended its filing rules to allow the exception the Court of
Criminal Appeals had declined to create. The statutory
change permitted Smith to file for habeas relief.

Smith filed his second habeas petition before this
Court's decision in *Penry II*. He argued once more that the
special issues were inadequate: "In *Penry [I]*, the Supreme

Court . . . held that the former Texas capital sentencing statute did not provide an adequate vehicle for expressing its reasoned moral response to [mitigating] evidence in rendering its sentencing decision." Application for Writ of Habeas Corpus Pursuant to Section 4A of Article 11.071 of the Texas Code of Criminal Procedure in No. W91–22803–R(A) (Tex. Crim. App.), p. 191, Record 193 (internal quotation marks omitted). Smith acknowledged the trial court tried to solve the problem with the nullification charge, but he explained that "[i]t confounds common sense to suggest jurors—who are sworn to tell the truth—would ever understand that they were authorized to answer [special-issue] questions falsely." *Id.*, at 193, Record 195. Smith continued:

> "Nothing in the special issues themselves linked the 'nullification' instruction to the specific questions asked; nothing in the special issues themselves authorized the jury to consider mitigating evidence when answering the questions; nothing in the special issues themselves authorized the jury to answer the questions 'no' when the truthful answer was 'yes'; in short, nothing in the special issues permitted the jury to apply the 'nullification' instruction." *Id.*, at 194, Record 196.

Smith conceded he had not objected to the nullification charge but confirmed that he had challenged the special-issues statute and that the Court of Criminal Appeals had reached the merits of this claim on direct review.

The State, relying upon a procedural bar different from and indeed contradictory to the one it now raises, responded that "[t]his claim [was] procedurally barred as it was both raised and decided on the merits on direct appeal." 1 App. 156; see also *id.,* at 157 (describing Smith's position as an "identical complaint" and an "identical argument" to his claim on direct appeal). The State con-

tended, in the alternative, that Smith's position was meritless because the nullification charge cured any problem with the special issues. Respondent's Original Answer and Response to Applicant's Application for Writ of Habeas Corpus in No. W91–22803–R(A) (Tex. Crim. App.), pp. 136–139, Record 467–470.

The state trial court denied habeas relief on the ground Smith was procedurally barred from raising the same claim denied on direct review absent "a subsequent change in the law so as to render the judgment void . . . ." *Ex parte Smith*, No. W91–22803–R, 86–87 (265th Dist. Ct. of Dallas Cty., Texas, Apr. 5, 2001).

### 3
### *Appeal from the Denial of State Habeas Relief*

While Smith's appeal from the state trial court's denial of his second habeas petition was pending, this Court decided *Penry II*. Smith filed a brief in the Court of Criminal Appeals explaining the relevance of *Penry II* to his habeas claim. He noted that the special-issue questions in his case were for all relevant purposes the same as those in *Penry II*. Applicant's Brief for Submission in View of the United States Supreme Court's Opinion in *Penry* v. *Johnson* in No. W91–22803–R (Tex. Crim. App.), pp. 4–5. He maintained the nullification charges were also indistinguishable, *id.*, at 5–6, and had in *Penry II* been held insufficient "to cure the error created by the Special Issues." Applicant's Brief for Submission, at 6–7. Smith concluded by explaining that the procedural bar for raising an issue already resolved on direct review did not apply "where an intervening legal decision renders a previously rejected claim meritorious." *Id.*, at 12 (citing *Ex parte Drake*, 883 S. W. 2d 213, 215 (Tex. Crim. App. 1994) (en banc)). (We note the Court of Criminal Appeals recently adopted this position. See *Ex parte Hood*, 211 S. W.3d 767, 775-778 (Tex. Crim. App. 2007).)

The Court of Criminal Appeals ordered supplemental briefing on the relevance of *Penry II*. Given that *Penry II* addressed the sufficiency of a nullification charge as a cure for inadequate special issues, Smith's supplemental brief concentrated on the same issue. Nevertheless, his central argument remained that he "presented significant mitigating evidence that was virtually indistinguishable from Penry's and thus undeniably beyond the scope of the special issues." Applicant's Supplemental Briefing on Submission in No. 74,228 (Tex. Crim. App.), p. 12 (hereinafter Applicant's Supp. Briefing). The nullification charge was inadequate as well, in his view, because, based on the ethical dilemma, "there is a reasonable probability that the nullification instruction . . . precluded [a juror who found that Smith's personal culpability did not warrant a death sentence] from expressing that conclusion." *Id.*, at 13. Alternatively, Smith argued he was "also entitled to relief under *Penry II*" because "[e]ven if the jury might have been able to give effect to some of [his] mitigating evidence within the scope of [the] special issues, the confusing nullification instruction itself" may have prevented the jury from doing so. *Id.*, at 14. As such, the nullification charge was "worse than no instruction at all." *Id.*, at 15–16 (emphasis deleted).

The State responded that the special issues were adequate and, furthermore, that the nullification charge, unlike the charge in *Penry II*, cured any problem. State's Brief in No. 74,228 (Tex. Crim. App.), pp. 2–11. In response to Smith's second argument the State contended "it tests the bounds of reason to grant [Smith] relief based on a good-faith attempt to give him a supplemental instruction to which he was not constitutionally entitled." *Id.*, at 11. In reply Smith reiterated his two distinct arguments, devoting most of the brief to his original trial objection. Applicant's Reply to Respondent's Response to Applicant's Brief for Submission in No. 74,228 (Tex. Crim. App.).

The Court of Criminal Appeals denied the habeas peti-
tion. It found no *Penry* error, reasoning that the special
issues were adequate to consider the mitigating evidence.
*Ex parte Smith*, 132 S. W. 3d, at 412–415. Any evidence
excluded from the purview of the jury, the court indicated,
was not "constitutionally significant." *Id.,* at 413, n. 21.
In the alternative the court held the nullification charge
and the argument at trial were distinguishable from those
at issue in *Penry II.* In Smith's case, the court reasoned,
the nullification charge would have been an adequate cure
even if the special issues were too narrow. 132 S. W. 3d,
at 416–417.

The majority did not adopt or address the reasoning of
the two concurring opinions, which argued that Smith had
procedurally defaulted his "*Penry II* claim" because while
he had objected to the special issues at trial, he had not
objected separately to the nullification charge. *Id.*, at 423–
424 (Hervey, J., concurring); *id.*, at 428 (Holcomb, J.,
concurring).

4

*Smith I*

The ruling of the Court of Criminal Appeals in Smith's
second state habeas proceeding was reversed by this Court
in *Smith I.* The Court's summary disposition first rejected
as unconstitutional the Texas court's screening test for
"constitutionally significant" evidence. 543 U. S., at 43–
48; see also *Tennard* v. *Dretke*, 542 U. S. 274 (2004).

The *Smith I* Court next observed that although Smith
had presented relevant mitigating evidence, the jury's
consideration was "tied by law to findings of deliberate-
ness and future dangerousness that had little, if anything,
to do with" that evidence. 543 U. S., at 45, 48. There was,
in other words, a *Penry* error. As a final matter, despite
differences between the nullification charges in *Smith I*
and *Penry II*, the variances were "constitutionally insig-

nificant" because "*Penry [II]* identified a broad and intractable problem." 543 U. S., at 46, 47 (citing *Penry II*, 532 U. S., at 799–800). The nullification charge was therefore inadequate under *Penry II*. The judgment was reversed and the case remanded. 543 U. S., at 48–49.

### 5

### *Remand Following Smith I*

On remand Smith's brief urged that harmless-error review was inappropriate because under the nullification charge the jury proceedings became capricious. See Applicant's Brief on Remand in No. 74,228 (Tex. Crim. App.), pp. 8–18. The State responded that Smith was procedurally barred because he waited to raise his allegation of "jury charge error" under *Penry II* until the second state habeas petition nine years after his conviction. State's Brief on Remand in No. 74,228 (Tex. Crim. App.), pp. 1, 2 (hereinafter State's Brief on Remand). The State maintained this was an adequate and independent state ground for denying relief. *Ibid.* Smith's motion and direct appeal, the State said, had been based on a challenge to the statute setting forth the special issues, not to the jury charge. *Id.*, at 5–6. The State also maintained that this Court had not addressed whether the special issues were "a sufficient vehicle for the jury to give effect to [Smith's] mitigation evidence." *Id.*, at 12–16.

Smith replied to the procedural-bar argument by noting he had "consistently raised his claim regarding the inadequacy of the special issues to permit constitutionally adequate consideration of his mitigating evidence and this Court has consistently addressed the merits of [that] claim." Applicant's Reply Brief on Remand in No. 74,228 (Tex. Crim. App.), p. 1.

The Court of Criminal Appeals denied relief. The court's confusion with the interplay between *Penry I* and *Penry II* is evident from the beginning. Reasoning that

"[t]he Supreme Court did not address our conclusion that the two special issues provided [Smith's] jury with a constitutionally sufficient vehicle to give effect to his mitigating evidence," 185 S. W. 3d, at 463 (internal quotation marks omitted), the court again concluded that the special issues were adequate, *id.*, at 464–467. Nevertheless, because of its "uncertainty" regarding this Court's *Penry II* jurisprudence, the Court of Criminal Appeals went on to "assume, for the sake of argument, that at least some of [Smith's] evidence was not fully encompassed by the two special issues" and that "the jury charge in this case was constitutionally deficient under *Penry II*." 185 S. W. 3d, at 467.

The Court then applied the framework of *Almanza* v. *State*, 686 S. W. 2d 157 (Tex. Crim. App. 1984) (en banc), to Smith's claim of error. Under *Almanza*, Smith needed first to show instructional error. Having assumed Smith had done so, the court next asked whether the error was preserved for review. If so, Smith would need to establish some "actual," not merely theoretical, harm resulting from the error. If Smith had not preserved the error, by contrast, he would need to establish not merely some harm but also that the harm was egregious. 185 S. W. 3d, at 467.

The court found Smith had not preserved his claim of instructional error. Smith's only objection at trial, reasoned the state court, was that the statute authorizing the special issues was unconstitutional in light of *Penry I*. 185 S. W. 3d, at 461–462, and n. 8. This objection did not preserve a challenge to the nullification charge based on *Penry II*, so Smith was required to show egregious harm. That showing had not been addressed by this Court's holding in *Smith I*, the Court of Criminal Appeals indicated, because this Court only required that Smith demonstrate a reasonable probability of harm. In the view of the Court of Criminal Appeals there was little likelihood

that Smith's jury had failed to consider the mitigating evidence. 185 S. W. 3d, at 468–473. On this basis the court concluded Smith had failed to show egregious harm and, as such, habeas relief was foreclosed.

We granted certiorari. 549 U. S. \_\_ (2006).

## II

### A

The special issues through which Smith's jury sentenced him to death did not meet constitutional standards, as held in *Penry I*; and the nullification charge did not cure that error, as held in *Penry II*. This was confirmed in *Smith I*. The Court of Criminal Appeals on remand denied relief, nonetheless, based on two determinations: first, that Smith's federal claim was not preserved; second, as a result, that Smith was required by *Almanza* to show egregious harm. As a general matter, and absent some important exceptions, when a state court denies relief because a party failed to comply with a regularly applied and well-established state procedural rule, a federal court will not consider that issue. *Ford* v. *Georgia*, 498 U. S. 411, 423–424 (1991).

Smith disputes that the application of *Almanza* on state habeas review is a "firmly established and regularly followed state practice." *James* v. *Kentucky*, 466 U. S. 341, 348–349 (1984). The State argues it is. We may assume the State is correct on this point, for in our view the predicate finding of procedural failure that led the Court of Criminal Appeals to apply the heightened *Almanza* standard is based on a misinterpretation of federal law.

The State and the Court of Criminal Appeals read *Smith I* as having reversed because the nullification charge "prevented giving effect to [Smith's] mitigating evidence because it placed the jurors in an unconstitutional ethical quandary." Brief for Respondent 28. It is true Smith's second state habeas petition included an

argument that the nullification charge itself prevented the jury from considering his mitigating evidence. This, however, was not the only, or even the primary, argument he presented to the Court of Criminal Appeals and this Court. As detailed above, Smith's central objection at each stage has been to the special issues.

In *Smith I*, this Court agreed the special issues were inadequate and so reversed the Court of Criminal Appeals. In challenging the special issues Smith did contend that the nullification charge was flawed. This Court engaged in much the same analysis. That analysis was only necessary, however, because the Court of Criminal Appeals had twice rejected Smith's claim of *Penry* error based on the mistaken idea that "regardless of whether [Smith's] mitigating evidence was beyond the scope of the two statutory special issues, the judge's extensive supplemental [nullification] instruction provided a sufficient vehicle for the jury to consider all of [Smith's] mitigating evidence." *Ex parte Smith*, 132 S. W. 3d, at 410. In other words Smith argued, and this Court agreed, that the special issues prevented the jury from considering his mitigating evidence; and the nullification charge failed to cure that error. In its opposition to certiorari in *Smith I*, the State understood that under *Penry II* it was the special issues, not the nullification charge, that created the error. See Brief in Opposition in *Smith* v. *Texas,* O. T. 2004, No. 04–5323, p. 17 ("In essence, the [nullification] instruction did not *create* new error; rather, the instruction simply *failed to correct* the error identified in *Penry I*").

The Court of Criminal Appeals' mistaken belief that *Penry II*, and by extension *Smith I*, rested on a separate error arising from the nullification charge may have stemmed from Smith's use of the term "*Penry II* error" in his supplemental brief and from this Court's citation to *Penry II*, rather than *Penry I*, in *Smith I*. Applicant's Supp. Briefing 11. Smith's labeling of the claim in his

supplemental brief, however, did not change its substance. See *Ex parte Caldwell*, 58 S. W. 3d 127, 130 (Tex. Crim. App. 2000); *Rawlings* v. *State*, 874 S. W. 2d 740, 742 (Tex. App. Fort Worth 1994). And this Court's reference to *Penry II*, rather than *Penry I*, has been explained above. As the parties' post-trial filings, the state courts' judgments, and this Court's decision in *Smith I* make clear, Smith challenged the special issues under *Penry I* at trial and did not abandon or transform that claim during his lengthy post-trial proceedings.

After *Smith I*, the State argued for the first time that Smith's pretrial motions, and his argument on direct appeal, raised a "statutory" complaint about the entire Texas death penalty scheme different from his current theory. State's Brief on Remand 6. The State expanded on that claim in its arguments to this Court, in which it suggested Smith made a strategic decision to launch a broad attack on the state system rather than attempt to obtain adequate instructions in his own case. Brief for Respondent 28, 32–33; Tr. of Oral Arg. 40. Regardless of how the State now characterizes it, Smith's claim was treated by the Court of Criminal Appeals as a *Penry* challenge to the adequacy of the special issues in his case, and that is how it was treated by this Court in *Smith I*.

The Court of Criminal Appeals on remand misunderstood the interplay of *Penry I* and *Penry II*, and it mistook which of Smith's claims furnished the basis for this Court's opinion in *Smith I*. These errors of federal law led the state court to conclude Smith had not preserved at trial the claim this Court vindicated in *Smith I,* even when the Court of Criminal Appeals previously had held Smith's claim of *Penry* error was preserved. The state court's error of federal law cannot be the predicate for requiring Smith to show egregious harm. *Ake* v. *Oklahoma*, 470 U. S. 68, 75 (1985).

### B

Under *Almanza*, once Smith established the existence of instructional error that was preserved by a proper objection, he needed only to show he suffered "*some* harm" from that error. In other words relief should be granted so long as the error was not harmless. 686 S. W. 2d, at 171. It would appear this lower standard applies to Smith's preserved challenge to the special issues.

The Court of Criminal Appeals explained in its recent decision in *Penry* v. *State,* 178 S. W. 3d 782 (2005), that once a state habeas petitioner establishes "a reasonable likelihood that the jury believed that it was not permitted to consider" some mitigating evidence, he has shown that the error was not harmless and therefore is grounds for reversal. *Id.,* at 786–788 (citing *Boyde* v. *California*, 494 U. S. 370 (1990)). We note that the Court of Criminal Appeals stated in dicta in this case that even assuming Smith had established that there was a reasonable probability of error, he had not shown "'actual' harm," 185 S. W. 3d, at 468, and therefore would not even satisfy the lower *Almanza* standard. We must assume that this departure from the clear rule of *Penry* v. *State* resulted from the state court's confusion over our decision in *Smith I*.

The Court of Criminal Appeals is, of course, required to defer to our finding of *Penry* error, which is to say our finding that Smith has shown there was a reasonable likelihood that the jury interpreted the special issues to foreclose adequate consideration of his mitigating evidence. See *Johnson* v. *Texas*, 509 U. S. 350, 367 (1993). Accordingly, it appears Smith is entitled to relief under the state harmless-error framework.

\*    \*    \*

In light of our resolution of this case, we need not reach the question whether the nullification charge resulted in a

separate jury-confusion error, and if so whether that error is subject to harmless-error review.

For the reasons we have stated, the judgment of the Court of Criminal Appeals is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 05–11304

LAROYCE LATHAIR SMITH, PETITIONER *v.* TEXAS

ON WRIT OF CERTIORARI TO THE COURT OF CRIMINAL
APPEALS OF TEXAS

[April 25, 2007]

JUSTICE SOUTER, concurring.

I join the Court's opinion. In some later case, we may be required to consider whether harmless error review is ever appropriate in a case with error as described in *Penry* v. *Lynaugh*, 492 U. S. 302 (1989). We do not and need not address that question here.

# SUPREME COURT OF THE UNITED STATES

———————

No. 05–11304

———————

## LAROYCE LATHAIR SMITH, PETITIONER *v.* TEXAS

ON WRIT OF CERTIORARI TO THE COURT OF CRIMINAL
APPEALS OF TEXAS

[April 25, 2007]

JUSTICE ALITO, with whom THE CHIEF JUSTICE, JUSTICE
SCALIA, and JUSTICE THOMAS join, dissenting.

The issue in this case is less complicated than the opinion of the Court suggests. The federal constitutional error that occurred at the penalty phase of petitioner's trial and that was identified in *Smith* v. *Texas*, 543 U. S. 37 (2004) *(per curiam) (Smith I)*, concerned a flaw in the jury instructions: Specifically, the instructions did not give the jury an adequate opportunity to take some of petitioner's mitigating evidence into account. This error could have been avoided by changing the instructions. Indeed, our opinion in *Penry* v. *Lynaugh*, 492 U. S. 302, 322–323 (1989) *(Penry I)*, rather pointedly discussed how proper instructions might be crafted. But defense counsel—facing evidence of aggravating factors that might have led the jury to return a death verdict no matter what instructions were given—never objected to the text of the instructions and declined the trial judge's invitation to suggest modifications, choosing instead to argue that *Penry I* precluded Texas from applying its death penalty statute to petitioner at all.

As a result of this failure to object, the Texas Court of Criminal Appeals (TCCA), in the decision now under review, *Ex parte Smith*, 185 S. W. 3d 455 (2006), held that petitioner could not overturn his death sentence without surmounting a Texas rule that is analogous to the federal

"plain error" rule. See *United States* v. *Olano*, 507 U. S. 725, 731 (1993). Under this Texas rule, adopted in *Almanza* v. *State*, 686 S. W. 2d 157, 171 (Tex. Crim. App. 1984) (en banc), a criminal defendant who fails to object to a jury instruction cannot obtain a reversal simply on the grounds that the instruction was erroneous and the error was not harmless. Rather, the defendant must meet the heightened standard of "egregious harm." *Id.*, at 174. Finding that the error in petitioner's case did not meet this heightened standard, the TCCA held that petitioner's sentence must stand. 185 S. W. 3d, at 467.

Because petitioner failed to raise an objection to the trial court's attempt to cure the federal constitutional defect in the "special issues," the TCCA was entitled to apply its stricter *Almanza* rule, an altogether commonplace type of procedural rule that represents an adequate and independent state-law ground for the TCCA's decision. Accordingly, I would dismiss for want of jurisdiction.

## I

### A

At the time of petitioner's trial, Texas statutes provided that the jury at the penalty phase of a capital case had to answer two (and in some cases, three) questions, known as the "special issues."[1] The two questions that had to be answered in every case were

> "(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
>  "(2) whether there is a probability that the defendant

---

[1] A third "special issue" applies when the evidence raises the question whether the killing was provoked by the deceased. See Tex. Code Crim. Proc. Ann., Art. 37.071, §(2)(b) (Vernon Supp. 1992). In petitioner's case, that "special issue" was inapplicable.

would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. Ann., Art. 37.071, §§2(b)(1) and (2) (Vernon Supp. 1992).

If the jury found unanimously that the answer to all the "special issues" was "yes," then the death sentence was imposed; otherwise, the sentence was life imprisonment. Art. 37.071(2)(e).

  In *Jurek* v. *Texas*, 428 U. S. 262 (1976), the Court upheld the facial constitutionality of this scheme, but in *Penry I*, decided in 1989, the Court held that use of this scheme in Penry's case violated the Eighth Amendment because evidence of Penry's mental retardation and severe childhood abuse did not fit adequately into any of the "special issues" as submitted to the jury. With respect to the first of the "special issues," the Court discussed at some length the possibility that an instruction broadly defining the requirement of deliberateness might have permitted sufficient consideration of Penry's mental retardation and abuse. The Court wrote:

> "In the absence of jury instructions defining 'deliberately' in a way that would clearly direct the jury to consider fully Penry's mitigating evidence as it bears on his personal culpability, we cannot be sure that the jury was able to give effect to the mitigating evidence of Penry's mental retardation and history of abuse in answering the first special issue. Without such a special instruction, a juror who believed that Penry's retardation and background diminished his moral culpability and made imposition of the death penalty unwarranted would be unable to give effect to that conclusion if the juror also believed that Penry committed the crime 'deliberately.' Thus, we cannot be sure that the jury's answer to the first special issue reflected a 'reasoned moral response' to Penry's miti-

gating evidence." 492 U. S., at 322–323 (emphasis added).

Petitioner's trial took place in 1991—that is, after *Penry I* but before *Penry* v. *Johnson*, 532 U. S. 782 (2001) *(Penry II)*. At the guilt phase, petitioner was found to have committed an exceptionally brutal and coldblooded murder. Petitioner, a former employee of a fast food restaurant, went with some friends to the restaurant after closing hours when the employees were cleaning up and asked to be admitted to use the phone. The teenage shift manager, Jennifer Soto, let him in and greeted him with a hug. Petitioner followed her to her office and demanded the combination of the safe. Soto told him she did not know the combination, but petitioner beat her on the head with the butt of a gun, demanding the combination and continuing until the gun handle fell off. Petitioner then shot Soto in the back, grabbed a knife from the kitchen and inflicted what were described at trial as numerous "'torture' wounds," and finally slit her throat. Brief for Respondent 1.

At the penalty phase, the prosecution relied on evidence showing the brutal nature of the murder, as well as petitioner's history of violence. The defense offered mitigation evidence, including some that loosely resembled Penry's, specifically low IQ and evidence of possible organic learning and speech disorders.

As the Court relates, prior to trial petitioner's attorney contemporaneously filed three motions. The first, citing *Penry I*, argued that the "special issues" provided the jury with an inadequate vehicle to consider the mitigating effect of petitioner's age, and asked the court to declare the Texas capital sentencing scheme unconstitutional as applied to petitioner. 1 App. 7–10. The second motion, also citing *Penry I*, likewise argued that the Texas death penalty was "unconstitutional because it does not provide

for the introduction and subsequent use by the jury of mitigating evidence which is not relevant or material to the special issues." 1 App. 13. Neither motion requested that the trial judge give jury instructions bringing the Texas scheme into compliance with the Eighth Amendment. Rather, petitioner's counsel argued that the judge could not provide "*any instruction* with regard to mitigating evidence" that would obviate the constitutional problem. *Id.,* at 9 (emphasis added). The trial judge denied both these motions.

In the third motion, petitioner's counsel asked for a copy of the "mitigation instructio[n]" that the court planned to give. *Id.,* at 17–19. This motion anticipated that the trial court would issue an instruction to "attempt to resolve the *[Penry I]* problem." *Id.,* at 18. The court granted this motion and invited defense counsel to offer suggested revisions. But although *Penry I* had explained how the jury instructions might be modified to obviate the error found in that case—*i.e.*, by broadly defining the term "deliberately" in the first "special issue," 492 U. S., at 322–323,—and despite the fact that all involved understood that the trial judge's proposed instruction was intended to cure the *Penry I* problem, petitioner's counsel did not object that the proposed mitigation instructions were inadequate to cure the defect in the "special issues." Rather, faced with the aggravating factors noted above, petitioner maintained that any submission of the "special issues" to the jury, regardless of any additional instructions given, would violate *Penry I.*

Hearing no objection to the instructions, the trial judge went ahead and gave the instructions that he had proposed. After instructing the jury on the relevant "special issues," the judge also gave a supplemental "mitigation" or "nullification" instruction. This instruction told the jurors that they should take into account any evidence that they viewed as mitigating and that if this evidence convinced

them that the defendant should not be sentenced to death, they should answer "no" to one of the "special issues." Instructed in this way, the jury returned a death verdict.

As our subsequent opinions in *Penry II* and *Smith I* held, the "nullification" instruction did not obviate the problem found in *Penry I*. Similar instructions were at issue in both *Penry II* and *Smith I*, and in both cases the Court held that this approach was flawed, noting that the instructions on the "special issues" and the supplemental or "nullification" instructions were conflicting and that the conflict created an "ethical problem" for the jurors because they were "'essentially instructed to return a false answer to a special issue in order to avoid a death sentence.'" *Smith I*, 543 U. S., at 47–48 (quoting *Penry II, supra,* at 801).

On remand after *Smith I*, the TCCA, in the relevant portion of its opinion, addressed the question whether petitioner was entitled to reversal of his death sentence based on the federal constitutional error found in this Court's *per curiam* opinion. 185 S. W. 3d, at 467–468. The TCCA, having noted that petitioner did not object to the nullification instruction, *id.*, at 461, applied the unpreserved error prong of its *Almanza* rule, which represents the TCCA's interpretation of a provision of the Texas Criminal Code addressing the review of claimed errors in jury instruction. 185 S. W. 3d, at 467–468. Under *Almanza*, once it is established that there was error in a jury instruction,

> "'the next step is to make an evidentiary review . . . as well as a review of any other part of the record as a whole which may illuminate the actual, not just theoretical, harm to the accused.' If the defendant failed to object to the jury charge, he must show that the error caused him such egregious harm that he did not have 'a fair and impartial trial.'" 185 S. W. 3d, at 464

(quoting *Almanza*, 686 S. W. 2d, at 174).

Finding that the error in this case had not produced the requisite "egregious harm," the TCCA held that petitioner's death sentence must stand.

### B

The Court today concludes that the federal constitutional error that we identified in *Smith I* was the very error that petitioner asserted in his pretrial motions, *ante*, at 7, but this holding is incorrect. While petitioner did argue that the "special issues" precluded the jury from considering his mitigating evidence, he never argued that the trial judge's proposed instructions were insufficient to cure that defect. It was perfectly reasonable for the TCCA to hold that, by failing to object to the cure, petitioner has not preserved a claim that the cure was ineffective.

This case perfectly illustrates the wisdom of such a rule. We have never held that *no instruction* is capable of curing the *Penry I* problem with the "special issues." Indeed, we have suggested that the problem could have been avoided if the trial judge had not instructed the jury to give a false answer to one of the "special issues" but had instead taken the course discussed in *Penry I*—defining the term "deliberately" as used in the first "special issue" in a way that was broad enough to permit consideration of the relevant mitigating evidence. 492 U. S., at 322–323. However, the trial court never thought to take this route because petitioner never argued that the nullification instruction was inadequate to satisfy federal law. Preventing the TCCA from applying plain-error review in these circumstances is tantamount to holding that petitioner had a federal right to sandbag the trial court.

### II

Once it is recognized that petitioner did not preserve an objection to the federal adequacy of the trial judge's pro-

posed instructions, there are several remaining questions that must be considered. Because the Court does not address these, I address them in abbreviated form.

### A

The first is whether the TCCA was precluded from applying the *Almanza* rule in the decision now under review because the TCCA did not invoke that state-law ground in *Ex parte Smith*, 132 S. W. 3d 407 (2004), the decision that was reversed by this Court in *Smith I*. Petitioner accuses the TCCA of engaging in "an impermissible 'bait and switch,'" "an unacceptable manipulation of its procedural rules to defeat this Court's adjudication of [petitioner's] *Penry* claim," and "nothing less than an opportunistic invocation of state law to avoid compliance with this Court's decision." Brief for Petitioner 43–44.

This argument unjustifiably impugns the good faith of the TCCA and rests on a fundamentally flawed premise, namely, that the majority of the TCCA in its 2004 decision tacitly held that petitioner's claim regarding the jury instructions had been fully preserved. In the 2004 decision, however, the TCCA majority said nothing whatsoever on this point, choosing instead to reject the claim on the merits. While four concurring judges argued that petitioner had procedurally defaulted this claim, *Ex parte Smith*, 132 S. W. 3d, at 423–424 (opinion of Hervey, J.); *id.*, at 428 (opinion of Holcomb, J.), the majority did not respond and was under no obligation to do so. Nor was the majority under any obligation to decide the preservation issue before addressing the merits. There are a few nonmerits issues that a court must address before proceeding to the merits, see, *e.g.*, *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83 (1998) (holding that a federal court generally must assure itself of its jurisdiction before proceeding to the merits), but petitioner does not argue that error-preservation is regarded in this way

under Texas law.

In the absence of any legal obligation to consider a preliminary nonmerits issue, a court may choose in some circumstances to bypass the preliminary issue and rest its decision on the merits. See, *e.g.*, 28 U. S. C. §2254(b)(2) (federal habeas court may reject claim on merits without reaching question of exhaustion). Among other things, the court may believe that the merits question is easier, and the court may think that the parties and the public are more likely to be satisfied that justice has been done if the decision is based on the merits instead of what may be viewed as a legal technicality. Thus, the TCCA's 2004 opinion cannot be read as holding that petitioner's jury instructions argument was unencumbered with procedural defects or limitations.

Even if that earlier TCCA decision did not hold that petitioner's jury instructions argument was properly preserved, petitioner suggests that where a state court originally rejects a federal claim on the merits and that decision is reversed by this Court, the state court may not impose the state-law procedural bar on remand to reach the same result. But whether it may be advisable for state courts to apply state law before reaching federal constitutional questions, see *Massachusetts* v. *Upton*, 466 U. S. 727, 736 (1984) (STEVENS, J., concurring in judgment), we have never held that States are required to follow this sequence. And in cases in which this Court has reversed a state-court decision based on a possible federal constitutional violation, it is not uncommon for the state court on remand to reinstate the same judgment on state-law grounds. See *id.*, at 735, n. 2. See also *State* v. *Wedgeworth*, 127 P. 3d 1033 (Kan. 2006) *(per curiam)* (concluding on reconsideration that hearsay statements were unobjected to and harmless); *Saldano* v. *State*, 70 S. W. 3d 873, 890 (Tex. Crim. App. 2002) (en banc) (concluding on remand that error confessed in this Court had not been

preserved for appellate review); *State* v. *Hallum*, 606
N. W. 2d 351, 353 (Iowa 2000) (en banc) (concluding on
remand that defendant had forfeited his right to invoke
the confrontation clause because he had procured the
witness' unavailability at trial in the first instance); *Gas-
kin* v. *State*, 615 So. 2d 679, 680 (Fla. 1993) (holding on
remand in a capital proceeding that defendant had failed
to object properly to unconstitutionally vague aggravating
factors instruction); *Happ* v. *State*, 618 So. 2d 205, 206
(Fla. 1993) *(per curiam)* (same); *Booker* v. *State*, 511 So. 2d
1329, 1331 (Miss. 1987) (en banc) (holding on remand that
defendant failed to object contemporaneously to prosecu-
tor's statements).

## B

The second question is whether the *Almanza* "egregious
harm" standard is an adequate and independent state
ground sufficient to support a state judgment that pre-
cludes consideration of a federal right. *Coleman* v. *Thomp-
son*, 501 U. S. 722, 729 (1991). I am satisfied that it is.

In order to be "adequate," a state rule must be a "firmly
established and regularly followed state practice," and
should further a legitimate state interest. *James* v. *Ken-
tucky*, 466 U. S. 341, 348–349 (1984). The *Almanza* "egre-
gious harm" rule meets these requirements. In *Almanza*,
the TCCA exhaustively reviewed the history of the Texas
statute[2] governing objections to jury-charge error. 686

———————
[2] At the time of *Almanza*, the Texas Code of Criminal Procedure of
1965 Annotated, Article 36.19, provided: "Whenever it appears by the
record in any criminal action upon appeal that any requirement [re-
garding certain jury instructions] has been disregarded, the judgment
shall not be reversed unless the error appearing from the record was
calculated to injure the rights of defendant, or unless it appears from
the record that the defendant has not had a fair and impartial trial. All
objections to the charge and to the refusal of special charges shall be
made at the time of the trial." This provision continues in effect una-
mended through the present day. See *ibid.* (Vernon 1991).

S. W. 2d, at 160–161. The court concluded that the statute imposed a two-part standard: If there was a timely objection at trial, the objecting party need show only "some harm"; but if no proper objection was made the party claiming error must demonstrate that the "error is so egregious and created such harm that he has not had a fair and impartial trial—in short, egregious harm." *Id.*, at 171 (internal quotation marks omitted and emphasis deleted).

Petitioner argues that the *Almanza* standard is not adequate but rather is arbitrary and discretionary for three reasons: that it was intended to be applied on direct review, not on habeas review; that it was intended to control only nonconstitutional claims; and that it has not been applied to *Penry* claims. Brief for Petitioner 47, n. 16. None of these grounds is borne out.

Immediately following *Almanza*, the TCCA applied it in state habeas proceedings. See *Ex parte Tuan Van Truong*, 770 S. W. 2d 810, 813 (1989) (en banc) *(per curiam); Ex parte Patterson*, 740 S. W. 2d 766, 776–777 (1987) (en banc); *Ex parte White*, 726 S. W. 2d 149, 150 (1987) (en banc); *Ex parte Maldonado*, 688 S. W. 2d 114, 116 (1985) (en banc).[3] Moreover, the TCCA has applied *Almanza* in cases raising *Penry*-type claims, which are, of course, based on the Eighth Amendment. See, *e.g.*, *Turner* v. *State*, 87 S. W. 3d 111, 117 (2002) (showing of "egregious harm" required by statute to support claim that unobjected-to jury-charge error restricted jury's consideration of mitigating evidence); *Ovalle* v. *State*, 13 S. W. 3d 774, 786 (2000) (en banc) *(per curiam)* (applying *Almanza* to preserved mitigation charge error); *Cantu* v. *State*, 939

_____

[3] Petitioner argues that Texas has not applied *Almanza* in habeas proceedings more recently. But petitioner fails to cite any case where Texas has applied a more permissive form of review to such a claim in state habeas proceedings, nor would it be logical for Texas to afford more deferential review in habeas proceedings than on direct review.

S. W. 2d 627, 647–648 (1997) (en banc) (citing *Almanza* for
requirement that unobjected-to claim of mitigation charge
error is waived but for "egregious error"); *Coleman* v.
*State*, 881 S. W. 2d 344, 356–357 (1994) (en banc) (citing
*Almanza* in rejecting claim of *Penry* error); *Flores* v. *State*,
871 S. W. 2d 714, 723 (1993) (en banc) (citing *Almanza* in
connection with a reverse-*Penry* error claim, that giving a
mitigation charge was inappropriate where defendant
intentionally forewent introducing any mitigating
evidence).

The *Almanza* rule was adopted in 1986, six years prior
to petitioner's 1991 trial. That the TCCA has not cited
*Almanza* in every single case regarding jury-charge error
is not dispositive. Unlike the jurisprudential novelties at
issue in *Ford* v. *Georgia*, 498 U. S. 411 (1991), and *NAACP*
v. *Alabama ex rel. Patterson*, 357 U. S. 449, 457–458
(1958), it was unremarkable at the time of petitioner's
trial, and equally unremarkable today, that the TCCA
would apply those standards to govern his claim of in-
structional error.

Finally, the *Almanza* rule, in imposing a contemporane-
ous-objection requirement, serves a well-recognized and
legitimate state interest: avoiding flawed trials and mini-
mizing costly retrials. See *Coleman, supra,* at 746; *United
States* v. *Young*, 470 U. S. 1 (1985). Accord, Fed. Rules
Crim. Proc. 51(b) and 52(b). This case itself bears out the
basis for such a rule. Despite being directly solicited for
suggested changes by the trial judge, petitioner never once
objected to the text of the jury instructions. Knowing full
well that the trial court believed that the nullification
charge had cured the *Penry I* error inherent in the "special
issues," petitioner's attorney elected to sit quietly by.
Because the *Almanza* rule is regularly followed and serves
important state interests, it is an "adequate" state ground.

The *Almanza* rule is also "independent" of federal law.
The determination by the TCCA that petitioner failed to

object to the nullification instruction, and was therefore required to prove "egregious harm," rested purely on state statutory law.

## C

Finally, I consider petitioner's argument that the grounds on which the TCCA relied in concluding that petitioner was not entitled to relief under *Almanza* were inconsistent with the *Smith I* mandate, most notably because, while *Smith I* held that the "nullification" instruction did not eliminate the Eighth Amendment problem identified in *Penry I*, the TCCA noted on remand that the jurors' statements during *voir dire* suggested that they would be able to take all mitigating evidence into account in rendering their verdict. See 185 S. W. 3d, at 468.

Petitioner's argument confuses the question decided in *Smith I* (whether the jury instructions violated the Eighth Amendment) with the separate question decided by the TCCA on remand (whether the instructions caused "egregious harm"). A penalty phase instruction violates the Eighth Amendment if "there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde* v. *California*, 494 U. S. 370, 380 (1990). But as we made clear in *Calderon* v. *Coleman*, 525 U. S. 141, 147 (1998) *(per curiam)*, "[t]he *Boyde* analysis does not inquire into the actual effect of the error on the jury's verdict; it merely asks whether constitutional error has occurred." Texas law similarly bifurcates these inquiries. In *Almanza*, the TCCA held that

> "finding error in the court's charge to the jury begins—not ends—the inquiry; the next step is to make an evidentiary review [of the whole record to] illuminate the actual, not just [the] theoretical, harm to the

accused." 686 S. W. 2d, at 174.[4]

At this stage, Texas law may well be more forgiving than federal law. Under *Almanza,* a petitioner seeking a reversal for unpreserved instructional error must show that the error deprived him of a "fair and impartial trial," working "egregious harm." *Ibid.* By contrast, under *Olano,* 507 U. S., at 734–735, in federal court unpreserved error merits reversal only when it constitutes "plain error." But whatever the standard, it is clear that this Court's finding of constitutional penalty phase error in *Smith I* in no way foreclosed the second and subsequent step, undertaken by the TCCA on remand, of determining whether that error required reversal. Accordingly, the TCCA's *Almanza* analysis does not conflict with the *Smith I* mandate.

For these reasons, I would dismiss for want of jurisdiction.

------

[4] Reading the TCCA's more recent decision in *Penry* v. *State,* 178 S. W. 3d 782 (2005), to mean that Texas law requires resentencing upon a finding of preserved jury instruction error, the Court in this case effectively orders the TCCA to require petitioner to be resentenced. *Ante,* at 17–18. Because the TCCA is better equipped than are we to analyze and apply Texas law, I would leave application of its procedural default rules to that court.